## MILLER v. ADELSON et ux.
### Civil No. 2413.

District Court, W. D. Pennsylvania.

Dec. 2, 1944.

See also 51 F.Supp. 201; 4 F.R.D. 177.

Frank W. Stonecipher, of Pittsburgh, Pa., and Maurice Rose, of Philadelphia, Pa., for plaintiff.

Kountz, Fry, Staley & Meyer and A. E. Kountz, all of Pittsburgh, Pa., and Robert E. Ashe and E. O. Golden, both of Kittanning, Pa., for defendants.

GIBSON, District Judge.

The complainant has moved for judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, alleging that no issue as to any material fact is disclosed by defendants' answer. Both parties have filed supporting affidavits.

Upon hearing of the motion the following facts appeared:

On April 14, 1942, one Edward J. Steiner, an attorney at law, entered into a written contract for the sale of a tract of land in Ford City in this District. The purchase price was to be $80,000, and $5,000 was paid when the contract was signed. At the time Mr. Steiner was representing Pipe and Tube Products, Inc., a New Jersey corporation not then registered in Pennsylvania, of which the present complainant, Ray Miller, was the treasurer. On the same day that the agreement was executed an assignment of the contract to the complainant purports to have been made by Mr. Steiner. By the agreement the defendants agreed to deliver to Edward J. Steiner or his assigns by general warranty deed, title in fee simple that was good and marketable and such as could be insured by a reputable title insurance company, and in default thereof agreed to return the $5,000.00 paid upon signing of the contract. Complainant, as successor to Edward J. Steiner, claims that defendants were unable to furnish the title contemplated by their agreement and seeks to recover that payment by the instant action.

The complainant, in the amended complaint, attacks the defendants' title as follows:

"6. The plaintiff avers that the said title to the real estate is and for many years prior to the date of the agreement of sale was subject to many encumbrances and easements and therefore unmarketable in the manner as follows:

"A. An easement or a right of way is vested in the Allegheny Branch of the Pennsylvania Railroad with the right of access to the land described in said Exhibit 'A' to make and perform cuts, fills, slopes, drains, etc. thereby creating a perpetual burden in the nature of an easement upon the land to be acquired to the prejudice of the rights of the owner, his heirs and assigns.

"B. The title to the premises described in said Exhibit 'A' was acquired by the defendants by divers deeds and conveyances from the Pittsburgh Plate Glass Company and the said Pittsburgh Plate Glass Company by deed reserved unto itself, its successors and assigns, to be effective against the grantee and the subsequent parties in title, the right of way in a road-way laid out or about to be laid out running over the land referred to in said Exhibit 'A.'

"B (1) That the deed of the Pittsburgh Plate Glass Company aforementioned, through the defendants' acquired title to the premises described in said agreement Plaintiff's Exhibit 'A,' was dated April 2, 1903 and recorded in the Recorder's Office of Armstrong County, Pennsylvania, in Deed Book Vol. 90, page 380, and describes the said premises in ipsissimis verbis as the written agreement Exhibit 'A,' as by reference thereto will more fully appear and which is incorporated herein by reference. In said deed there is set forth the following language:

"'Excepting and reserving from the operation of this deed the public road that now runs through the property.'

\*  \*  \*  \*  \*  \*

"B (2) Plaintiff avers that at the time of the signing of the written agreement Exhibit 'A' and at all times since, the boundary line of the tract of the land undertaken to be conveyed by Exhibit 'A' to wit: the line extending from the stake in the right of way line of the Allegheny Valley Railroad Division, North 53° 30' West at right angles to the said right of way line, did not extend 678.8 feet to the low water mark on the Allegheny River, as in said written agreement stipulated, but, complainant is informed, extended only a distance of 520 feet from said stake to the said low water line; and the boundary line opposite to the one just described did not extend a distance of 687.5 feet from the Allegheny Valley Railroad Division right of way to the low water mark of the Allegheny River but only a distance of 527 feet. By reason whereof the tract of ground undertaken to be conveyed by the defendants as aforesaid contained only three-quarters of the acreage indicated by the specified length of the boundary lines stipulated in the agreement of sale aforesaid.

"C. By the terms of said deed from the Pittsburgh Plate Glass Company to its successors or assigns and binding upon the grantee and the subsequent holders in title the said Pittsburgh Plate Glass Company reserved 'the right to maintain, use, repair, renew or remove all pipe lines heretofore laid or now owned by it upon or across the said premises' (as described in said Exhibit 'A') 'for the conveyance of natural gas. Also the right at any time or from time to time hereafter to construct, maintain, use, repair, renew or remove any additional line or lines of pipe for the conveyance of natural gas' and such other rights incident thereto.

"D. That a substantial portion of the ground described in said Exhibit 'A' is submerged under the waters of the Allegheny River and the use of said ground by the owners thereof is limited and restricted to the navigation rights of the public over the Allegheny River and is also limited and restricted by regulations of the United States Government with respect to the construction or building thereon or the use thereof by the owners thereof.

"E. Plaintiff further avers that at the time of the signing of the agreement and at all times since, there was a public road which ran through the tract of land described in Exhibit 'A', which road belongs to the State, over which the public in general has the right of passage, and by reason thereof said easement was a burden upon the land agreed to be conveyed."

Upon hearing of the motion for judgment the objections practically boiled down to three, (a) the road reserved in the deed from Pittsburgh Plate Glass Company to D. B. Heiner et al., a predecessor in title to that of defendants, (b) the reservations in said deed of the right to install and maintain water lines by the Pittsburgh Plate Glass Company, and (c) the United States harbor line and the navigation rights of the public between high and low water in the Allegheny River and the consequent loss of acreage due to the change in the low water line some years before the execution of the agreement to sell. The original reservation of the Lawyers Title Company to the title included mention of the right of way of the Allegheny Valley Branch of the Pennsylvania Railroad, referring to cuts, fills, slopes, drains, etc., but on hearing it developed that the property in question was not subject to any such cuts, etc.

The agreement of sale was prepared in large part by Mr. Steiner, acting for the Pipe and Tube Products, Inc. (See affidavit of Robert E. Ashe.) He followed the de-

scription of the plot as set forth in the deed from the Pittsburgh Plate Glass Company to D. B. Heiner and Abraham Greenbaum, dated April 2, 1903, which had been followed in all deeds prior to and including the deed to the defendants. In 1928 the United States built a dam and lock at Ford City which resulted in raising the low water mark of the Allegheny River so that the depth of the land of the plot was reduced at one end from 678.8 feet to 545 feet, and at the other end from 687.5 feet to 561 feet. The effect of this slackwater dam was to reduce the former acreage of the plot from 9.65 acres to 7.86 acres. The increase in the low water line of the river placed under water all the water pipes of the Pittsburgh Plate Glass Company and the road which had been reserved by it in the deed to Heiner and Greenbaum. The size of the plot was fully known by Steiner and the complainant, as it had been surveyed in April, 1942, by direction of Steiner, and Steiner, the complainant, and other officers of complainant's company had viewed it months before any question was raised as to its marketability. It fully complied with the requirements of the plaintiff as to size.

After the date of the certificate of the Lawyers Title Company, with its reservations, Mr. Steiner wrote to Mr. Robert E. Ashe, who represented the defendants, calling attention to certain matters which the defendants were required to show had been cleared up, and stated that there were minor matters in his opinion and that the transaction "can soon be closed." Later a date was fixed for closing the matter (August 3, 1942) but Mr. Ashe was prevented by engagements from then attending to the matter and suggested August 17, 1942, as the time. On behalf of the defendants it was stated that this date was not convenient, as officers of Pipe and Tube Products, Inc., could not attend, as their presence in Washington, D. C., was required for the purpose of arranging for priorities on machinery and equipment for their proposed new plant. On August 17, 1942, Mr. Ashe wrote to Mr. Steiner. In his letter he stated that August 21, 1942, would be the deadline for closing up the matter. On August 27, 1942, the complainant herein protested in respect to this action, and for the first time mentioned the matters urged in the instant action as of any importance. It was not until October 23, 1942, that any demand was made for the return of the advance payment. In the meantime, viz.,

on July 22, 1942, the Pipe and Tube Products, Inc., agreed to the continuation of a lease of part of the Adelson property to the Westinghouse Company and provided for a cancellation of it on a sixty-day notice after October, 1943. This agreement was signed by the complainant herein as representing his company. It tends to sustain the contentions of the defendants that the alleged imperfections in title were not seriously regarded at the date of the letter.

Prior to the 17th of August, 1942, the defendants had arranged with the Borough of Ford City for the mutual transfer of the properties of the defendants and the Borough which was part of the agreement of sale.

In view of the persistence of the complainant and his counsel long after the present criticism of defendants' title was known to them, and the allegations of defendants to their declarations that the defects asserted were immaterial and would not interfere with closing the transaction, it is questionable whether or not the complainant waived the alleged defects and is equitably estopped from now urging them. The matter seems to be one to be determined by proof rather than by summary judgment. The motion for judgment upon the pleadings will therefore be denied.