JAY L. CHERRY & another *vs.* W. CHESTER CRISPIN & others.

Norfolk.    April 3, 1963. — May 7, 1963.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Sale,* Rescission, Sale of real estate.    *Equity Jurisdiction,* Rescission.

A buyer of a dwelling was entitled in equity to rescind the sale where it appeared that under the sale and purchase contract the sale was contingent upon the buyer's obtaining a "G. I." mortgage and approval of the mortgage by the Veterans' Administration, for which the Veterans' Administration required a certificate by an exterminator that the dwelling was free of termites, that such a certificate was obtained and was relied on by the Veterans' Administration in approving the mortgage and by the buyer in consummating the sale, that the certificate was untrue since

the dwelling in fact was infested with termites, as the seller had reason to believe at the time of making the sale and purchase contract, that the seller "knowingly permitted and acquiesced in the false representation" contained in the certificate, and that the mortgage would not have been approved had the true condition of the dwelling been known.   [92–93]

In a suit in equity by a buyer of a dwelling against the seller for rescission of the sale, the final decree, besides ordering repayment of the purchase price to the plaintiff and reconveyance of the dwelling to the defendant, should have made provision for payment to the defendant of the fair rental value of the dwelling during occupancy by the plaintiff and for other adjustments between the parties necessary to full restoration of the status quo.   [93]

BILL IN EQUITY filed in the Superior Court on April 11, 1960.

The defendants appealed from a final decree entered by *DeSaulnier*, J., following hearing by *Hudson*, J.

*James P. Lynch, Jr.*, for W. Chester Crispin & another.

*James C. Roy* (*Israel Cherry* with him) for the plaintiffs.

SPIEGEL, J.   This is a suit in equity in which the plaintiffs seek rescission of a conveyance of real estate alleging fraud and misrepresentation on the part of the defendants.[1] The defendants have appealed from a final decree granting, in effect, rescission of the conveyance.   Portions of the evidence are reported.   The trial judge made "Findings of Fact, Rulings of Law and Order for Decree" which he thereafter adopted as a report of material facts.   We summarize the pertinent findings.

The defendants, husband and wife, were the owners of a parcel of land with a dwelling and garage thereon in the town of Cohasset.   On December 11, 1959, they entered into a purchase and sale agreement with the plaintiffs, also husband and wife, whereby the property was to be sold to the plaintiffs for $21,000, and conveyance to be made on or before February 11, 1960.   The agreement provided that the sale was contingent upon the plaintiffs acquiring a so called "G. I." mortgage.   Specifically, the sale was contingent upon "(1) V.A. appraisal in an amount not less than the purchase price; or (2) the seller's acceptance of the

---

[1] "Defendants" in this opinion refers solely to W. Chester Crispin and Eva S. Crispin.   The final decree dismissed the suit as against several other defendants.

price set by the V.A. appraiser, in which case both parties shall be deemed bound to performance; and (3) V.A. approval of the purchaser's mortgage to finance the sale." An essential condition to such approval was satisfaction of the Veterans' Administration's (V. A.) requirement that "The Seller shall furnish Veteran Purchaser prior to settlement a written statement (or certification) from a recognized exterminator that there is no evidence of termites or other wood boring insects in the property." On February 2, 1960, the plaintiff, Jay L. Cherry, received a letter from the Home Savings Bank notifying him of its approval of his application "for a G.I. loan," and advising him of the necessity for securing a written statement from a recognized exterminator. Cherry then called one William Matthews, an employee of the broker in the transaction, regarding the letter from the bank. Matthews offered "to take care of it" and, in turn, called the Crispin home and explained to Mrs. Crispin the V. A. requirement of an exterminator's certificate. He told her that the seller must obtain the letter or certificate and pay for the termite inspection. She authorized Matthews to engage a recognized exterminator. On February 4, 1960, Matthews communicated with an exterminator, whom he had engaged on prior occasions, and requested "the usual certificate" from him. The examination and inspection of the premises by this exterminator "was done, if at all, in a very careless manner." Although there was extensive and obvious evidence of "termite and wood borer activity in various parts of the house, inside and out," on February 4, 1960, the day he claims to have made the examination, he stated in a letter addressed to Crispin, but sent to Matthews: "There is no evidence of termite or wood-borer activity in the structures." The exterminator knew or should have known that conditions on the premises would not have satisfied the V. A. requirement involved. When Matthews received the exterminator's letter, he telephoned Cherry and "acquainted him with its contents." On February 10, 1960, papers were "passed" in the office of the bank's lawyers. The exterminator's let-

ter was referred to in the presence of the defendants during this closing, and read by Cherry who "relied upon its contents in going through with the sale." At the closing and at the time the purchase and sale agreement was executed, the defendants "had reason to believe that termites and wood-borer insects had infested parts of the house." They "knowingly permitted and acquiesced in the false representation made at the passing of papers to the effect that there was 'no evidence of termites or wood-borer insects.'" The Home Savings Bank was relying upon the V. A. approval in making the loan, and the V. A. would not have approved the mortgage without the certificate from the recognized exterminator.

The Cherrys moved into the house on March 11, 1960, and, within a few days, saw evidence of termites and "wood-borer insects." "The . . . work necessary to relieve the premises of termites and wood-borers and install termite control will cost $1,500." Since acquiring the property the plaintiffs have spent about $40 on the garage and painted the inside of the house.

One who has relied upon a misrepresentation as to a material fact, intentionally made and knowingly false, is entitled to rescission of the disputed transaction. *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 265. "The test is the same as that applied in actions of tort for deceit." *Yerid* v. *Mason*, 341 Mass. 527, 529. The defendants make no contention that the evidence fails to support the finding that they knowingly acquiesced in the false representation upon which the plaintiffs relied. They argue, rather, that the plaintiffs have suffered no "legal damage" because the misrepresentation merely "induced them to do what they were already legally bound to do," i.e., perform the purchase and sale agreement. They point out that the contingency of V. A. approval of the mortgage was satisfied, thus requiring the plaintiffs to accept conveyance of the deed. We are unable to agree with this line of reasoning. The contingency of V. A. approval of the mortgage was "a condition inserted in the contract for the benefit of the buyer." *leFreitas* v. *Cote*, 342 Mass. 474, 477. The plaintiffs were

bound to accept the deed only if the V. A. approved. They had the right to expect that this "approval" would be untainted by the fraudulent representation later found to have existed. The judge found that the V. A. would not have "approved the mortgage" had the true condition of the premises been known. The V. A. and the plaintiffs relied upon the representation that the real estate was free from "termite or wood-borer activity" and without this representation the sale would not have taken place. In completing the purchase the plaintiffs were damaged and they are entitled to relief by means of rescission of the conveyance.

Although rescission is an appropriate remedy on the facts found, the final decree entered must be modified. "Ordinarily one seeking rescission of a transaction must restore or offer to restore all that he received under it." *Bellefeuille* v. *Medeiros,* 335 Mass. 262, 266. *Jurewicz* v. *Jurewicz,* 317 Mass. 512, 517. The final decree before us orders, inter alia, a reconveyance from the plaintiffs to the defendants, payment of the full purchase price with interest to the plaintiffs by the defendants, and also reimbursement for the $40 expended by the plaintiffs on the garage. No mention is made, however, of payment to the defendants of the fair rental value of the premises during the plaintiffs' occupancy, a consideration necessary for full restoration of the status quo. *Powers, Inc.* v. *Wayside, Inc. of Falmouth,* 343 Mass. 686, 694. See Restatement: Restitution, §§ 156–159. Such restoration also requires a determination of amounts to be credited to either of the parties by way of adjustments of taxes paid, improvements made, and so forth. *Lang* v. *Giraudo,* 311 Mass. 132, 140–141. The court has the power to impose such equitable conditions upon the relief granted the plaintiffs as will amply protect the rights of the defendants. *Thomas* v. *Beals,* 154 Mass. 51, 55. *Bellefeuille* v. *Medeiros,* 335 Mass. 262, 266. In the accounting which must follow, *Lang* v. *Giraudo, supra,* 139, reconsideration of the $225.62 payment ordered in paragraph five of the final decree is necessary as there does not appear to be any support for it in the record.

The case is remanded to the Superior Court and the final decree is to be modified after further proceedings consistent with this opinion.

*So ordered.*