QUINTON R. HERRIN, JR. *vs.* GEORGE BOUZIANIS & another.[1] July 1, 1981. Herrin (the buyer) seeks specific performance of an agreement of the defendants (the vendors) to sell to him real estate in Amesbury for $188,800. The property was subject to a first mortgage held by a cooperative bank bearing interest at nine and one-half percent. A deposit of $5,000 was paid on the execution of the agreement. A further sum of $10,000 was to be paid on delivery of the deed. A second mortgage bearing interest at fifteen percent was to be given by the buyer to the vendors

---

[1] Randolph Garabedian.

in an amount equal to $188,800 *less* the aggregate of (a) the amount of the first mortgage, plus (b) the $5,000 deposit, and (c) plus $10,000 to be paid on the delivery of the deed.

The purchase and sale agreement provided, when first drawn, that the real estate would be conveyed subject to the cooperative bank's first mortgage "*at 9 1/4% interest.* If the [b]uyer is unable to assume said mortgage, the deposit shall be refunded to him." (Emphasis supplied.) This provision was amended by all the parties to change the emphasized words to read "not to exceed 9 3/4%," so that the buyer in effect was undertaking to endeavor to obtain from the bank or retain first mortgage financing at a rate not exceeding nine and three-quarters percent with the provision that he would receive a refund of his deposit if he failed to do so.

The case was referred to a master. The facts are here stated on the basis of our interpretation of his somewhat confusing report, which was adopted. Judgment was entered for the vendors. The buyer appealed.

The master (among other matters) found (1) that the vendors did not request that they be relieved of liability on the first mortgage note to be assumed by the buyer and the buyer made no request of the cooperative bank that the vendors be thus relieved; (2) that the cooperative bank refused to allow the buyer to "assume" the first mortgage at less than a ten percent rate of interest and had not approved a release of the vendors' obligation on the first mortgage note; and (3) that the provision of the agreement which "conditioned the [b]uyer's obligation to purchase on his being able to assume . . . [the] existing mortgage at 9 3/4% . . . was a condition protecting the" buyer. The master concluded that the buyer had "attempted to purchase the real estate by entering into a new obligation . . . increasing the" existing first mortgage interest rate to ten·percent, "without releasing the . . . [vendors] from their obligation to pay the" mortgage debt "in case of default." This he regarded as a material change of the purchase and sale agreement which had "not [been] agreed upon between the parties." The change, he found in effect, would increase the vendors' contingent obligation on the first mortgage and the risk of default on the second mortgage. The buyer received back his deposit, but without releasing the vendors.

The denial of specific relief and of damages was correct. The buyer in effect had attempted to arrange financing of the first mortgage on a basis which would comply with the purchase and sale agreement. He had failed to arrange such financing and was not able to tender performance in accordance with the agreement. Because the buyer was prepared to tender only a substituted performance detrimental (at least in minor degree) to the vendors, judgment was correctly entered for them.

The master found that one of the vendors had indicated before the date for closing that he did not want to go through with the deal if he could not clear $15,000 after expenses and told the buyer he must get the vendors freed from liability on the first mortgage. If the vendors had thus been

freed, the buyer might well have been able to persuade them to accept the remainder of the proposed financing arrangement or to have established that the increase (because of the ten percent first mortgage rate) in risk of default under the mortgages was immaterial. No such release of the vendors, however, was sought or obtained, nor was it required expressly by the agreement so far as this record shows. In any event, the agreement was not performed fully by the buyer as indicated above.

The case of *deFreitas* v. *Cote*, 342 Mass. 474, 476-478 (1961), relied upon by the buyer is distinguishable. There the buyer was able to obtain and tender the full consideration called for by the purchase and sale agreement from sources other than a G.I. loan and so was in a position to waive a condition (inserted for the buyer's benefit) that the agreement would be terminated if a G.I. loan could not be obtained. In the present case, the performance tendered by the buyer was not as favorable to the vendors as the financing to which they agreed, imposed upon them a greater liability in the event of default by the buyer than they had agreed to accept, and (because of the higher first mortgage interest rate) in some degree increased the risk of the buyer's default on each of the mortgages.

*Judgment affirmed.*

*James S. Gallagher* for the plaintiff.
*Norman M. Shack* for the defendants.