ARNOLD L. BOSSI *vs.* KARLENE WHALEN & another.[1] February 5, 1985. *Contract,* Sale of real estate, Modification, Waiver. *Waiver.*

Bossi, the seller of a single family dwelling under a purchase and sale agreement, appeals from the dismissal of his complaint following the allowance of the buyers' motion for summary judgment. He had sought specific performance and damages for the buyers' alleged breach of the agreement. The buyers claim that there is no genuine issue of fact and that the agreement automatically terminated because the buyers did not, in accordance with a mortgage contingency clause of the agreement, obtain a satisfactory mortgage commitment from a bank before a specified date. We conclude that the material before the judge was insufficient to allow the buyers' motion for summary judgment.

The following facts appear from the affidavits and other material. On March 30, 1983, Bossi, as seller, and Whalen and Pierce, as buyers, signed a purchase and sale agreement for Bossi's house. The agreement was made subject to two conditions, both contained in paragraph 29 of that document. Paragraph 29 in relevant part provides:

> "This agreement is subject to Buyers obtaining a One Hundred Fifteen Thousand Dollar ($115,000.00) mortgage loan from an institutional lender at current rates and terms by April 28, 1983 and if such commitment is not obtained, all deposits are to be returned and all parties discharged and the agreement shall be void and without recourse to either party.
>
> Further subject to Buyers obtaining a signed Purchase and Sale Agreement on either K. Whalen's single family house in Lowell, Massachusetts or J. P. Pierce's single family house at 29 Nashua Rd., Groton, Massachusetts by May 2, 1983. . . ."

The closing was to take place on June 1, time being of the essence.

The controversy arose because the mortgage commitment obtained by Whalen and Pierce required the sale of *both* their houses before the closing. Although Whalen's house was sold prior to June 1, Pierce's house was not.

---

[1] John P. Pierce.

On April 26, the prospective mortgagee apparently sent to McNiff Realty,[2] the broker, a copy of the mortgage commitment terms. Neither party said anything further about the terms of the mortgage until May 24. On that day the buyers' lawyer informed Bossi's lawyer that no closing would occur until Pierce sold his house. Bossi by affidavit stated that he then offered "to extend the contract of sale to allow them more time to sell their second home even though [he] could not agree to this new contingency." His affidavit also indicates that McNiff offered the defendants an interest-free loan to enable them to purchase Bossi's house. Affidavits from McNiff, who was also acting as broker for the sale of Pierce's house, and from another realtor state that Pierce rejected without counter offer two offers for his house for over $70,000 before June 15.[3] Pierce's affidavit claims he was willing to accept any reasonable offer.

The parties' obligations which are here relevant rest largely on the mortgage contingency clause. That clause may be viewed as containing two conditions, one relating to the terms of the mortgage and the other relating to the time for obtaining the mortgage commitment. The provision making the sale subject to the buyers' obtaining a $115,000 mortgage at "current rates and terms" was inserted in the contract for the benefit of the buyers, and as such could be waived by them. *deFreitas* v. *Cote,* 342 Mass. 474, 477 (1961). As pointed out in that case, "It was obviously to the buyer[s'] advantage that they be released from [their] obligations in the event that [they] should be unable to procure financial assistance." *Ibid.* See also *Cherry* v. *Crispin,* 346 Mass. 89, 92 (1963). On the other hand, the April 28 deadline for the obtaining of the mortgage commitment was inserted for Bossi's benefit because he was in the process of buying another house and needed a buyer with a mortgage commitment. See *Loda* v. *H. K. Sargeant & Associates,* 188 Conn. 69, 77 (1982). It provided him with a date by which he could know whether the buyers would have financing and would be bound to go through with the purchase.[4] Since that deadline was inserted for Bossi's benefit, it could be waived by him.

While the mortgage contingency clause permitted the buyers to withdraw if they did not obtain a commitment by April 28, that clause did not give them the right to vary unilaterally a material term of the purchase and sale agreement. To modify the requirement that only one house had to be sold, the buyers needed Bossi's consent. Even assuming that Bossi could be charged with notice to McNiff (the realtor)[5] of the bank's commitment

---

[2] The letter to the buyers bears the legend "cc McNiff Real Estate."

[3] There is nothing in the record indicating whether these offers were reasonable.

[4] The other date, May 2, by which one of the buyers' houses had to be sold, may also have been inserted for the benefit of the seller.

[5] But see *Kirkpatrick* v. *Boston Mut. Life Ins. Co.,* 393 Mass. 640, 644 (1985), suggesting that the question of agency ordinarily should not be determined on summary judgment. See generally *Fitzpatrick* v. *Gilson,* 176 Mass. 477, 479 (1900);

letter, which required the sale of both houses, this knowledge, in the face of the silence of Whalen and Pierce, was insufficient, in itself, to modify the agreement. Since Whalen and Pierce could waive the provision as to financing, and since they made no claim prior to May 24, 1983, that the mortgage commitment received was unsatisfactory, Bossi's knowledge and silence alone cannot be considered acquiescence in a requirement that both houses be sold. Unless additional facts are adduced at trial, we think the condition of paragraph 29 that only one house be sold was the operative provision as to the sale of the buyers' houses and that condition seems to have been satisfied.

This conclusion does not resolve, however, the liability of the buyers. That question appears to depend on whether one or both parties waived the provisions of the purchase and sale agreement inserted for their benefit. For example, did Whalen and Pierce, by their failure to notify Bossi that they were dissatisfied, waive the financing conditions of the agreement so that they must be deemed to have accepted the terms of the mortgage commitment they received? Or were the circumstances such that Bossi had constructive knowledge by April 28 that the commitment letter was unsatisfactory? Waiver, like agency or negligence, is dependent on the totality of circumstances and is not readily decided on affidavits. *Miller* v. *Adelson,* 4 F.R.D.. 177, 179 (W.D.Pa. 1944). *Pfeiffer* v. *Frank,* 19 F.R.D. 15 (S.D.N.Y. 1955). Compare *DeVaux* v. *American Home Assur. Co.,* 387 Mass. 814, 817-819 (1983); *Kirkpatrick* v. *Boston Mut. Life Ins. Co.,* 393 Mass. 640, 643-644 (1985) (agency). The evidence may also indicate a waiver on Bossi's part of the April 28 deadline so that despite a failure of Whalen and Pierce to inform Bossi in a timely manner that the terms of the mortgage commitment were unsatisfactory, the buyers could raise that fact thereafter. Liability may also depend on whether Pierce acted reasonably in refusing to sell or may depend on other questions raised by the evidence at trial. Suffice it to say that the material presented to the motion judge did not resolve the factual issues involved in determining liability. The allowance of the defendants' motion for summary judgment and the dismissal of the plaintiff's complaint were, therefore, error.

Accordingly, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

*Albert I. Gould* for the plaintiff.
*Willie R. Brown* for the defendants.

---

*Jamrog* v. *H. L. Handy Co.,* 284 Mass. 195, 200 (1933); *Stetson Press, Inc.* v. *Bunsen Oil Burner Corp.,* 285 Mass. 291 (1934). Compare *Cherry* v. *Crispin,* 346 Mass. at 91.