Creedon, J.
This appeal is brought under Dist/Mun. Cts. R. A. D. A., Rule 8C. We are asked by the defendants, Stephen and Roberta Tilton (“the Tiltons”), to decide whether the trial judge erred in finding that they, as sellers of property, did not have a right under the terms of a purchase and sales agreement for the property to retain a $10,750.00 deposit paid by Joseph Mitchell (“Mitchell”) toward the *14 purchase price of the property, when Mitchell foiled to give them written notice, as required under the mortgage contingency clause, that he would not be able to go forward with the purchase because he was unable to secure a mortgage. The trial judge entered a general finding for Mitchell in the amount of $10,750.00.
The Tiltons timely submitted requests for rulings of law upon which the trial judge ruled. We limit our review to the Tiltons’ request for ruling of law number 8, which sought a ruling that, “[biased upon all of the evidence, judgment shall enter for defendants. ...” We view this as requesting that a finding in their favor was required by law. The trial judge ruled on the request “Denied, as I do not find,” even though he did not make any findings of fact
As stated by Justice Nolan in Volume 9 of MASSACHUSETTS PRACTICE, CIVIL PRACTICE, §735, “Ordinarily, where the trial judge makes only a general finding in favor of one of the parties, and there is nothing to show whether the denial of a request for ruling was based on a mistake of law or upon the finding of other facts which would render the request inapplicable, the denial of the request will not be upheld on the ground that it was inapplicable to the facts found.”
While the requested ruling is not in the form contemplated by Mass. R. Civ. E, Rule 64A, and could properly have been denied, we will review, as is our right, the evidence to determine if, from any view of the evidence, a finding in favor of Mitchell would have been warranted. Nagarya v. Adams, 55 Mass. App. Div. 137 (1974) at 141, “We have, however, an inherent right to take jurisdiction of a case form a lower court in our discretion in order to prevent a miscarriage of justice.”
In the light most favorable to Mitchell, the trial judge could have found that on June 18,1997, the Tiltons and Mitchell executed an Offer to Purchase two lots of land located on the island of Martha’s Vineyard at 180 and 190 Skiff Avenue, Vineyard Haven, Massachusetts. On one lot there was situated a duplex house. The other lot was vacant A condition of the Offer was that the vacant lot be separate and buildable. The agreed upon offer price, for both parcels of land, was established at $215,000.00. Mitchell made a deposit of $1,000.00. The parties contemplated that a formal Purchase and Sales Agreement (agreement) would follow the initial Offer and be executed on or before July 12,1997.
Sometime in mid-July of 1997, the Tiltons and Mitchell executed the contemplated agreement that included the condition that the vacant lot was separate and buildable.[2] Mitchell made an additional deposit of $9,750.00 upon signing the agreement The agreement provided for a closing date of November 28, 1997, which ultimately was later postponed, at the request of the Tiltons’ counsel, until either December 1st or 8th of 1997, and contained a standard mortgage contingency clause that allowed Mitchell, upon written notice to the Seller prior to September 30,1997, to withdrawfrom the sale if he were unable to secure financing on or before September 30,1997. The agreement also allowed the Tiltons to retain the deposit made by Mitchell, as liquidated damages, if Mitchell defaulted.
Mitchell applied for financing. Although pre-approved for the financing, Mitchell’s lender would not commit to approval of the financing until Mitchell provide it with documentation that the vacant lot was indeed a separate and buildable lot Mitchell, in effort to comply with this request approached the broker who told him to go to the town hall. He did. There he was told to go to the bank that held a mortgage on the property. He did. He was there told that unless he was the owner of the property, he could not get from the bank what he was requesting.
*15 Mitchell maintained contact with the broker during the time he sought documents regarding the vacant lot’s building status, and repeatedly told the broker that he would be unable to obtain financing unless he could obtain documentation that the vacant lot was buildable. Mitchell claimed he was led to believe that the broker had told the Tiltons that he was having a problem securing a mortgage.
On September 30,1997, the date Mitchell was to have provided written notice if he was unable to secure a mortgage, he went to the Tisbury Town Hall and asked the building inspector the status of the vacant lot Mitchell did not give the broker or the Tiltons written notice that he was unable to secure a mortgage. In fact, Mitchell was still looking forward to purchasing the properly but told the broker he needed the proper paper work. At that point, the broker indicated that he would speak to the Tisbury building inspector. Mitchell received confirmation on October 22,1997 from the Tisbury building inspector that the vacant lot was a separate buildable lot
At about the time that Mitchell received notification that the vacant lot was sub-dividable and buildable, he received a letter from the broker that reviewed the pending sale. In that letter the broker made note that the dates regarding notification about financing deadlines had passed. Mitchell did not write to the broker expressing his view that the assertion was incorrect
With the information that the vacant lot was separate and buildable, an appraisal of the property was done. The property was appraised sometime at the end of November or beginning of December, at $20,000.00 less than the agreed upon sale price. In view of the appraisal, Mitchell’s lender would not commit to the loan. Mitchell sought an extension of the agreement but the Tiltons refused to sign such an extension. Mitchell was unable to secure a mortgage, and the sale of the property did not occur. It was not until the closing date that the Tiltons were informed that Mitchell was unable to secure financing. On February 3, 1998, Mitchell sought, at the suggestion of the broker, to submit a new Purchase and Sales Agreement with the Tiltons with a purchase price of $205,000.00, but that offer was rejected.
We are of the opinion upon this view of the evidence that, as a matter of law, a judgment was required to enter for the Tiltons. That is, upon no view of the evidence could a finder of fact rule in favor of Mitchell.
We start with a general observation about mortgage contingency clauses. “Such a clause in a real estate purchase and sale agreement is usually included at the request, and for the benefit, of the buyer. By conditioning the agreement on the buyer’s ability to obtain financing in a stated amount and on stated terms, such a provision enables the buyer to escape liability and to assure the return of his deposit should he be unable to obtain financing. See deFreitas v. Cote, 342 Mass. 474, 477 (1961); Bossi v. Whalen, 19 Mass. App. Ct. 966, 967 (1985). Such a clause may be of incidental benefit to the seller as well. By imposing a deadline, a mortgage contingency clause ‘provide[s] him with a date by which he could know whether the buyers would have financing and would be bound to go through with the purchase.’” Id. at 967. Tremouliaris v. Pina, 23 Mass. App. Ct. 722, (1987). However, “[t]he essential function of a mortgage contingency clause is to enable a purchaser to escape liability and to assure the return of his deposit in the event that he is unable to obtain file amount or type of financing prerequisite to his realty purchase.” Id. at 726.
Where a buyer runs the risk of losing a deposit because he is unable to obtain financing by the date set in an agreement, he should either exercise his right of cancellation or seek an extension of time. Pina at 725-726. On the particular facts of this case, Mitchell did not provide written notice of his wish to exercise his rights under the terms of the mortgage contingency by September 30,1997. And, it was not until late in November or early December that Mitchell sought an exten *16 sion. The date set for the election by Mitchell of his right to opt out of the agreement, however, had passed. By then Mitchell was on the “hook” and ran “the risk of losing his deposit” Id. at 726-727.
While the parties were not prohibited from extending the financing deadline, Churain v. Hobbie, 39 Mass. App. Ct. 302, 306 (1995), we are of the opinion that on no view of the evidence would a finding of an extension of the deadline or even a waiver of that deadline by the Tiltons be warranted. Their exists no evidence upon which a judicial finding could be made that Mitchell ever expressed in writing, to the Tiltons, or their broker, that he intended to invoke his right to cancel the agreement because of his inability to secure a mortgage by September 30,1997. Bather, the evidence would only suggest that Mitchell repeatedly informed the Til-tons’ broker that he did not have a commitment to his pre-approved loan, because he had not yet obtained verification that the vacant lot was buildable and, nonetheless, wished to proceed with the sale. This evidence warranted a finding that Mitchell, himself, waived the protective benefits he was afforded by the mortgage contingency clause. The evidence is silent on Mitchell’s expression of intent to take advantage of his right, under the financing contingency clause, and escape liability on his deposit We are of the opinion that the trial judge, in order to have found for Mitchell, had to have found that Mitchell intended to express his election to enforce his right and this intention was known to the Tiltons’ broker. However, similar to Churain, it would be clear error, under these circumstances, to give “weight to the unexpressed intentions of Mitchell in the face of altogether contrary provisions in the written” Agreement Id. at 306.
We see nothing in the record that would warrant a finding that the amount agreed upon as liquidated damages was unreasonable or offensive to the rule regarding such damages that was recently clarified in Kelly v. Marx, 428 Mass. 877 (1999) (liquidated damages enforceable where damages are uncertain at time agreement was executed).
We therefore reverse the judgment in favor of Mitchell and enter judgment for the Tiltons on the complaint and on their counterclaim in the amount of $10,750.00 plus interest and costs.
So ordered.

 The agreement did not identify upon whom the burden rested to show that the vacant lot was separate and buildabíe. We don’t see this as relevant to our discussion. Even assuming that it was upon the seller to show that the vacant lot was separate and buildable, the issue for this Court is whether Mitchell properly exercised his rights under the mortgage contingency clause.