Coven, J.
After a jury-waived trial of this “no-fault” summary process action, the defendant-tenant has appealed the judgment entered in favor of the plaintiff both for possession and on the defendant’s counterclaims for unlawful discrimination and retaliation.
We address at the outset three preliminary procedural arguments advanced by the defendant-tenant She contends that 1. the action was improperly brought in the name of Moore Real Estate Trust because only the trustees of the property could maintain the action; 2. the plaintiff failed to identify the true grounds for terminating her tenancy as required by the lease and she was, thus, entitled to possession; and 3. the action should have been dismissed because the plaintiff failed to comply with the G.Lc. 239, §1A requirement that notice of the action be sent to her by registered mail.
The evidence relevant to these initial arguments is as follows: The defendant occupied a residential unit trader the terms of a Section 8 lease which was to expire on December 31,2004. On September 30,2004, Derick Opdyke (“Opdyke”), the senior property manager of the plaintiffs property managing agent,[1] sent defendant, by certified mail, a no-fault notice of nonrenewal of her lease. In response to the notice, defendants then counsel advised the management company that the defendant would not vacate at the expiration of the lease. On December 13, 2004, plaintiff filed this summary process action pursuant to G.Lc. 239, §1A Notice of the action was sent to the defendant by certified mail. Defendant responded with an answer to the complaint, defenses and counterclaims.
1. The defendant sought a ruling from the trial judge that a trust “may act only through and in the name of its trustees, and not through a managing agent in bringing an action to recover possession.” The request was denied. The defendant has cited no authority for the proposition that a managing agent may not bring a summary process action. Cases reflect such practice. Elgbe v. Pine Street Inn, Inc., 441 Mass. 1009 (2004); Barkan Mgm. Corp. v. Sheehan, 60 Mass. App. Ct. 1120 (2004); Washington 138, LLC v. Reivax Properties, LLC, 2001 Mass. App. Div. 202; McNeil Mgm., Inc. v. Boyle-Bourdon, 1999 Mass. App. Div. 271; Corcoran Mgm. Co. v. Michaelangelo, 1996 Mass. App. Div. 130. The defendants request for ruling was properly denied.[2]
*124 2. The trial judge allowed defendant’s requests for rulings which, collectively, sought a ruling that notice of the actual grounds for seeking to terminate a tenancy was required and that merely stating a reason, but not the true reason, is insufficient to proceed with an eviction. The defendant’s position on this appeal is that the trial judge’s rulings are inconsistent with its general findings. ‘To the extent that [defendant] is claiming that the court’s allowance of h[er] requested rulings was inconsistent with its finding for [plaintiff,] [defendant] was required to bring the alleged inconsistency to the trial judge’s attention prior to any appeal by filing either a ... motion for a new trial or a motion to correct the inconsistency.” Diorio v. Bragan, 2000 Mass. App. Div. 29, 29-30. Although the defendant did file a motion seeking reconsideration of the judge’s ultimate finding in favor of the plaintiff, the defendant did not specifically address the alleged inconsistency between the rulings made and the finding. The issue is, thus, waived.
3. Section 1A of G.L.c. 239 permits a landlord to begin eviction proceedings thirty days prior to the expiration of a lease if the landlord has substantial grounds to believe that the tenant will continue in possession after the termination of the lease. Section 1A requires that notice of an action filed under this section be sent to the tenant by “registered” mail. The defendant argues that since the plaintiff sent notice of its filing by “certified” mail, the filing of the action was procedurally defective; and, thus, the court had no authority to allow the plaintiff to amend the complaint to include the expiration of the lease and the holdover of the defendant as a reason for the eviction. Essentially, defendant argues that because the notice was sent by certified rather than registered mail, plaintiff had to recommence the action in order to proceed.
As the defendant correctly argues, summary process is a creature of statute; and it is rules of statutory construction that required the rejection of the defendant’s argument. Pursuant to G.L.c. 4, §7 Forty-Fourth, [registered mail,’ when used with reference to sending of notice ... shall include certified mail.” The purpose of registered mailing is to provide evidence in the event of a dispute as to receipt of the notice. The same purpose is accomplished by notice sent by certified mail. Gerson Realty Inc. v. Casaly, 2 Mass. App. Ct. 875 (1974). Accordingly, there was no statutory defect in the notice mailed to the defendant.
4. The defendant filed fifty-five requests regarding the sufficiency of the evidence. The judge declined to rule on these requests, noting that each request sought a finding of fact rather than a ruling of law. There was no error. A judge is not required to rule upon requests as to the sufficiency of the evidence unless that request conforms to the requirements of Mass. R. Civ. P., Rule 64A(b). Under the rule, a proper request must be “substantially in the following language: The evidence warrants a finding for [requestor].”’ Although the defendant has failed to properly preserve issues on the sufficiency of the evidence, we exercise our discretion to review the evidence to avoid any miscarriage of justice. Mitchell v. Tilton, 2001 Mass. App. Div. 13, 14.
Thayer & Associates, Inc. (“Thayer”) has managed plaintiff’s properties since September, 2003. The defendant’s building was comprised of 18 units. Thayer’s senior property manager, Opdyke, has directly managed the building since May, 2004. In June of 2004, Opdyke sent the defendant a 30-day notice terminating her tenancy-at-will and offering to establish a new tenancy at a monthly rent of $1,632.00, an increase of $326.00. The defendant contacted the Cambridge Housing Authority, which in turn contacted and informed Opdyke that the defendant had a section 8 housing lease and was not a tenant-at-will, that her lease did not expire until December 31, 2004, and that no mid-term increase in rent was allowed. The CHA forwarded a copy of the defendant”s lease to Opdyke.
On September 30, 2004, at the direction of Lindsey McManus (“McManus”), a trustee of Moore Real Estate Trust, Opdyke sent the defendant a notice of its *125 intent not to renew defendant’s Section 8 lease. The notice did not state a cause for the nonrenewal. Indeed, throughout the trial, the plaintiff asserted that this summary process action was brought simply because the defendant’s tenancy expired and not because of any fault on her part.
However, faced with counterclaims for discrimination and retaliation, plaintiff presented the defense that cause for an eviction did exist Opdyke testified that numerous complaints, from occupants of two other units, had been made about the defendant The complaints related to the defendant making noise at night, taking over the laundry room, leaving trash in the hallway, spying on other occupants, and refusing food delivery couriers access to the building. Although Opdyke acknowledged that he was notified of the complaints prior to sending the notice of the termination of tenancy-at-will and the offer to establish a new tenancy, he testified on cross-examination that he had notice only of the noise complaints and not the other issues at the time of the termination notice. Opdyke further testified that although the tenant (McCarthy) who resided directly below the defendant had informed him of the problems, she had done so over a three-month period and that, as of the date the notice of termination of the tenancy-at-will was sent, the complaint was “primarily to do with” defendants constant creation of sounds of moving furniture within her apartment and the distress it was causing McCarthy. Asked over what three-month period he would have had full knowledge of McCarthy’s complaints, Opdyke stated: “Um, Jeme, July, Aug- um, through the month - through the month of August Through the month of September, October.”
Opdyke also stated that he had examined logs kept by a tenant regarding complaints, but indicated that he never asked the defendant about the complaints, never inquired of the defendant about her use of the laundry room, and never checked the defendant’s file or made any other inquiry to determine if other tenants had complained in the past.
Opdyke asserted around the time he was notified that plaintiff could not increase the rent during the middle of the defendant’s section 8 lease, a CHA employee advised him that the plaintiff could terminate the relationship, but the defendant would lose her section 8 voucher if the plaintiff proceeded with a “fault” based termination. Opdyke stated that the friendlier way to terminate defendants tenancy was just to not renew the lease and proceed with a “no-faulf ’ eviction proceeding.
Because the plaintiff notified the defendant of the termination of her tenancy within six months of her report to the CHA of the plaintiff’s attempted rent increase, there exists a G.L.c. 186, §18 statutory presumption[3] that the termination of the tenancy was a reprisal for the defendant’s report. See Scofield v. Berman & Sons, Inc., 393 Mass. 95, 111-114 (1984). In order to rebut the statutory presump *126 tions of reprisal, the plaintiff was required to demonstrate, by “clear and convincing evidence,” that notice of the nonrenewal “was not a reprisal ... and that [plaintiff] had sufficient independent justification for taking such action, and would have in fact taken such action, in the same manner and at the same time the action was taken,” even if defendant had not engaged in the protected activity. G.L.c. 186, §18; G.L.c. 239, §2A.
In this case, the plaintiff repeatedly stated that the defendant’s tenancy was terminated without fault and that the plaintiff simply decided not to renew the lease. We reject, however, any reading of G.L.c. 186, §18 which would allow for a finding to be made, by “clear and convincing evidence,” that reprisal was not the motive and that “sufficient independent justification” existed based solely upon a landlord’s characterization of its termination as “no-fault.” The statute would be rendered ineffective if a landlord were permitted to declare simply that it no longer desired the tenant’s occupancy.
With respect to the plaintiff’s motive for tenancy termination and the applicable standard of proof to be satisfied by the plaintiff, the Supreme Judicial Court has stated that in a case requiring the showing of clear and convincing proof, the evi-dentiary burden of persuasion is met if the evidence “induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist.” Callahan v. Westinghouse Bdcst. Co., 372 Mass. 582, 588 (1977), quoting Dacey v. Connecticut Bar Assn., 170 Conn. 520, 537 (1976).
Of particular importance is the statutory requirement that, for the plaintiff to meet the rebuttal evidence standard, the evidence must be “clear and convincing” that the plaintiff would have “taken such action [notice of intent not to renew], in the same manner and at the same time the action was taken.” Applying this standard, the plaintiff’s position is reduced to the following: Regardless of the defendant’s reporting activity, the plaintiff would have, without fault on defendant’s part, sought to terminate the landlord-tenant relationship, through the September 30, 2004, notice, despite the complaints made by occupants, than for no other reason than to be friendly and protect the defendants section 8 eligibility, but the actual motive and independent justification for the termination was the defendants conduct.
We conclude that the plaintiff has failed to establish a non-retaliatory reason for tenancy termination by clear and convincing evidence. First, immediately after notification of plaintiff’s inability to raise the rent mid-term, Opdyke discussed with a CHA representative plaintiff’s ability to terminate its relationship with the defendant. Second, this conversation followed on the heels of an offer to establish a new tenancy agreement between the plaintiff and the defendant. And, third, the plaintiff failed to establish the nature of the complaints known to Opdyke at the time of the September 30, 2004, non-renewal notice. The evidence, at least, established that Opdyke knew of the disruption to McCarthy that the defendant created with the movement of her furniture. However, by Opdyke’s own admission, that evidence was known at the time plaintiff extended the offer of a new tenancy based upon an increase in rent. Thus, that behavior, by itself, would not have provided the required justification. While it, perhaps, may provide the level of required evidence when combined with other additional factors, such as defendant taking over the laundry room, leaving trash in the hallway, spying on other occupants, and refusing to allow delivery couriers into the building, Opdyke could not establish when this additional information was known. Opdyke provided a time frame of anywhere between July and October of 2004 over which he became aware of these additional factors. Given such ambiguity, the heightened eviden-tiary burden of clear and convincing evidence was not met.
We conclude that, as a matter of law, the defendant was entitled to prevail on her counterclaim and defense for retaliation. The case is remanded for further proceed *127 ings on the issues of damages and attorney’s fees at to defendants claim of retaliation.[4]
5. Section 4(6) of G.L.c. 151B makes it unlawful for an owner of housing accommodations “to refuse to rent... or otherwise to deny or withhold from any person ... accommodations ... because of ... race.” In this case, the defendant concedes that the plaintiff was not refusing to rent to her the apartment. Her argument is, it appears, that the plaintiff sought to charge her a higher rate than those of white occupants and was, thus, “otherwise” “denying] or withhold[ing]” from her occupancy of her apartment based upon race. The plaintiff does not contend that G.L.c. 151B does not apply in this case.
We have not found, nor has either party brought to our attention, a case that addresses the proper standard to be applied in a case such as this. However, in Attorney General v. Brown, 400 Mass. 826, 833 (1987), a housing case involving discrimination against recipients of housing subsidies, the Court stated that the standard of proof as set out in Wheelock College v. MCAD, 371 Mass. 130, 136-139 (1976) was not limited to instances of employment discrimination.[5] We use this standard in evaluating the defendant's claim of having presented a prima facie case.[6]
To establish a prima facie case, the defendant needed to prove that she was otherwise qualified for housing. She failed to meet her burden. At a basic level, the defendant had to show that she was capable of meeting the rental obligation equal to that paid by the white tenants. There is no evidence that her subsidy together with her own available contribution was sufficient to enable her to pay rent at a level equal to the lowest rent charged to a white tenant for an apartment with similar square footage. The lowest rent charged to a white tenant with identical square footage was $1,550.00. In other words, to establish a prima facie case, the defendant had to establish she would have been qualified to rent the apartment had the plaintiff set the rent obligation to the same level it charged a white occupant. She failed to do so.
6. The last issue we address is the imposition of a monetary sanction by the judge against the defendant in connection with her filing of a motion for a protective order.
In an effort to gain evidence of discrimination, the defendant sought discovery of the size of other rental units. Presumably, this information would enable the defendant to establish a per square footage cost and compare the costs according *128 to race. The discovery request was apparently presented to the court by the defendant at the conclusion of the first day of trial on January 6, 2005. The plaintiff agreed to provide the information. No court order entered. The survey of the rental units was scheduled for January 10,2005.
The plaintiff sought admission to the defendants apartment in order to insure a comprehensive survey of all rental units. The defendant, believing that the entry was a pretext to find lease violations that would warrant an eviction, sought a protective order. The order was denied and, upon motion of the plaintiff, attorney’s fees were assessed against the defendant as costs in the amount of $1,525.00.
We have not found any authority for an award of attorney’s fees against a party seeking a protective order against discovery that is sought during a trial. However, assuming that there exists authority to levy sanctions against a party, we conclude that such a sanction was, in this case, an abuse of discretion.[7]
Accordingly, judgment for the plaintiff on the counterclaim for discrimination is affirmed. Judgment for the plaintiff on the retaliatory eviction counterclaim is vacated. The action is returned for the trial court’s assessment of G.L.c. 186, §18 damages, including attorney’s fees, and for the entry of judgment for the defendant in that amount.
So ordered.

 Thayer & Associates, Inc. was the managing agent.

 Defendant argues that this action was not brought by a managing agent but, rather, by the trust itself. The argument differs from the request for ruling that was filed below. The defendant has not properly preserved the issue for appeal. We note that the summons names the party instituting the summary process action as “Moore Real Estate Trust by and through its managing agent Thayer & Associates, Inc.” There was testimony offered by plaintiffs managing agenfis property manager that the trustees of the real estate trust authorized the property manager to bring the action.

 As herein relevant, G.L.c. 186, §18 provides: “Any person or agent thereof who ... takes reprisals against any tenant of residential premises for the tenant’s act of ... obtaining relief in any... administrative action the purpose of which action is to obtain damages under, or otherwise enforce, any federal, state or local law ... which has as its objective the regulation of residential premises ... shall be liable for damages which shall not be less than one month’s rent or more than three month’s rent, or the actual damages sustained by the tenant, whichever is greater, and the costs of the suit, including a reasonable attorney’s fee.
“The receipt of any notice of termination of tenancy ... within six months after the tenant has ... obtained relief in such action ... shall create a rebuttable presumption that such notice ... is a reprisal against the tenant for engaging in such activities. Such presumption shall be rebutted only by clear and convincing evidence that such person’s action was not a reprisal... and that such person had sufficient independent justification for taking such action, and would have in fact taken such action, in the same manner and at the same time the action was taken, regardless of the tenants engaging in... activities protect ed under this section.”

 Under G.L.c. 186, §18, the defendant is entitled to damages of not “less than one month’s rent or no more than three month’s rent, or the actual damages sustained by the tenant, whichever is greater, and the costs of the suit, including a reasonable attorney’s fee.” Because retaliation against a tenant for his exercise of protected rights under G.L.c. 186, §18 is a violation of G.Lc. 93A see 940 CMR §3.17(6) (b), the judge may award attorney’s fees “either under c. 93A or under G.L.c. 186, §[18], in the judge’s choice.” Crus Mgm. Co. v. Thomas, 417 Mass. 782, 790 n.8 (1994).

 In Wheelock, supra, the Court adopted the test set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas test, a claimant may make out a prima facie case of racial discrimination by showing “(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainants qualifications.” Id. at 802.

 McDonnell Douglas has been applied to housing discrimination claims in reported decisions of the Massachusetts Commission Against Discrimination, the agency that is charged with primarily enforcing G.L.c. 151B. Pacheco v. Cannela, 21 MDLR 151, 152 (1999); Unubum v. McGrath, 19 MDLR 81, 82 (1997); Rivera v. Djordjevic, 15 MDLR 1058 (1993); Agnew v. Novick, 4 MDLR 1584 (1982); Roy v. O’Brien, 2 MDLR 1259 (1980).

 According to plaintiff, defendant’s counsel informed plaintiff’s counsel that he would seek a ruling on the protective order at a 2:00 p.m. hearing on January 19, 2005. According to plaintiff’s counsel, it was asked of defendant’s counsel that counsel notify plaintiff’s counsel if the court agreed to hear the motion at that time. Defendant’s counsel refused the request and, therefore, plaintiff’s counsel appeared at the court on this date. However, the trial judge was not available for a hearing and the motion for a protective order was marked for hearing on January 11,2005, at which time it was allowed.
While the lack of alleged courtesy by defendant’s counsel and the unnecessary appearance of plaintiff’s counsel on January 10, 2005, may have influenced the judge in awarding costs as a sanction, the costs were assessed against the defendant, not defendant’s counsel.