COMMONWEALTH *vs.* PAUL A. DECOLOGERO (and two companion cases[1]). January 30, 1985. *Probable Cause. Practice, Criminal,* Indictment. *Search and Seizure,* Warrant, Affidavit.

These appeals challenge the validity of the indictments brought against one of the defendants and claims that a search warrant which led to the discovery of incriminating evidence was defective. We affirm the convictions of both defendants.

---

[1] One of the companion cases is against Paul A. DeCologero and one is against Anthony P. DeCologero. Anthony was convicted of concealing a motor vehicle with intent to defraud an insurer.

1. *Validity of Indictments Against Paul DeCologero.*

Paul was convicted in a jury-waived trial of concealing an insured motor vehicle with intent to defraud the insurer and of making false statements to the insurer in connection with a claim under a motor vehicle policy. Prior to trial he filed a motion to dismiss the indictments[2] asserting, citing *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163-164 (1982), that there was no evidence before the grand jury of his participation in any criminal activity.

The following account was presented to the grand jury through the testimony of two police officers, Lothrop Hedge and Philip Ryan. Paul is Anthony's nephew, and the two men worked "at the same place of employ- ment." In June of 1981, Paul reported that his 1977 Cadillac had been stolen and made a written claim of loss to his insurance company. On August 8, 1981, Paul's Cadillac was found in a ditch, one mile south of Anthony's beach residence in Manomet. When examined at a garage on August 10, 1981, by Office Hedge, the car had a hole cut in its roof and its interior had been stripped and partially burned. The car contained much beach sand, had no license plate, no keys, and its ignition had not been "popped."

The car and the name DeCologero reminded Hedge of an unrelated incident some fifteen days earlier when he had seen a "car very similar to this Cadillac" in the driveway of Anthony's summer house. Hedge drove to Anthony's summer residence where, in the driveway, he saw charred red material, "much the same" as the interior of the Cadillac, and vinyl material which "appeared the same as the vinyl material" covering the car's roof. He obtained a search warrant and, accompanied by Ryan, searched the house, where they found Paul's license plate for the Cadillac, the car's radio and a piece of metal from its roof. Another stolen vehicle was also found in Anthony's driveway.

The relevant standard for analyzing Paul's claim that he has not been sufficiently linked to the concealment of the automobile is whether the indictment is "supported by evidence sufficient to establish probable cause to arrest." *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450-452 (1984). *Commonwealth* v. *Botto, ante* 938 (1985). Is there "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the defendant had committed . . . an offense?" *Commonwealth* v. *O'Dell, supra* at 450, quoting from *Commonwealth* v. *Stevens*, 362 Mass. 24, 26 (1972).

"In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Hason*, 387 Mass. 169, 174 (1982), quoting from

---

[2] Paul A. DeCologero was found not guilty on a third indictment (making false statements to police).

*Brinegar* v. *United States*, 338 U.S. 160, 175 (1949). In weighing probabilities, we think it appropriate to take into account normal familial ties. Reasonably prudent persons recognize that there is some affinity between uncles and nephews. Here, the two men were not only related, but they also worked together. We also note that Paul's purportedly stolen car with its ignition intact remained parked for a considerable length of time in his uncle's driveway open to view.

Although the links between Paul and the theft, as presented to the grand jury, would not warrant a finding of guilty, see *Commonwealth* v. *Iannello*, 344 Mass. 723, 738-739 (1962); cf. *Commonwealth* v. *Derry*, 221 Mass. 45, 48-49 (1915), "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Commonwealth* v. *O'Dell*, 392 Mass. at 451, quoting from Smith, Criminal Practice and Procedure § 104 (2d ed. 1983). There is a large "difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search . . . . There is . . . a like difference in the *quanta* and modes of proof required to establish them." *Brinegar* v. *United States*, 338 U.S. at 173. The "requirement of sufficient evidence to establish the identity of the accused and probable cause to arrest him is considerably less exacting." *O'Dell*, at 451. See also *Commonwealth* v. *Hason*, 387 Mass. at 175. While the question is admittedly close, we think there was sufficient "reasonably trustworthy information" for a prudent person to believe that Paul had participated in the offences. *Commonwealth* v. *O'Dell*, 392 Mass. at 450. See *Commonwealth* v. *Francil*, 15 Mass. App. Ct. 35, 37 (1982). Contrast *Commonwealth* v. *McCarthy*, 385 Mass. at 163-164.

2. *Validity of the Search Warrant.*

(a) The defendants' claim that probable cause was lacking to issue the warrant to search Anthony's house for the license plate and other missing portions of Paul's Cadillac is without merit. Officer Ryan's affidavit described the vandalized car, its missing parts, Hedge's previous observation of the car at Anthony's house, and what was found in Anthony's driveway. The affidavit specified the items sought (plate, keys, radio, etc.). There is here no claim that the warrant and the affidavit should not be read together,[3] and Ryan, the affiant, was one of the officers executing the search warrant. See *Commonwealth* v. *Todisco*, 363 Mass. 445, 449 (1973); *Commonwealth* v. *Vitello*, 367 Mass. 224, 272-274 (1975). Compare *Commonwealth* v. *Taylor*, 383 Mass. 272, 274-275 (1981).

(b) The defendants fare no better in their claim that the affidavit failed to comply with G. L. c. 276, § 2B. The affidavit consists of three pieces of

---

[3] In any event the warrant specified the license plate which was the most significant item found in the house.

paper, a printed form[4] labeled "Affidavit in Support of Application for Search Warrant" and two attached typewritten sheets, the second of which was signed. The printed form leaves space only for two lines to describe the information on which to base the issuance of the warrant and is designed so that the space would be filled by appropriate words such as were here inserted, namely "see attached affidavit." Ryan's oath and the description of the goods to be seized appear on the printed form and did not have to be repeated on the attached sheets.

The fact that the clerk of court who took Ryan's oath on the affidavit used a form which erroneously calls for acknowledgment before a notary public instead of a clerk of court is of no consequence, particularly where, as here, the same person who acknowledged the oath on the affidavit signed the warrant as "clerk." See *Commonwealth* v. *Snow*, 363 Mass. 778, 784-786 (1973). Compare *Commonwealth* v. *Dozier*, 5 Mass. App. Ct. 865 & n.1 (1977).

*Judgments affirmed.*

*John C. McBride* for the defendants.

*Mary Ellen O'Sullivan*, Assistant District Attorney, for the Commonwealth.

---

[4] We take a dim view of the defendants' failure to include in the record appendix that page of Officer Ryan's affidavit which appeared on the printed form and of counsel's argument which proceeded as if that page did not exist. This failure, despite the explicit ruling of the motion judge that the pages should be read together, even if inadvertent, is not consistent with counsel's obligations as an officer of the court.

