TAKI TREMOULIARIS & another[1] *vs.* JOSEPH D. PINA & another.[2]

Bristol. January 12, 1987. — March 27, 1987.

Present: BROWN, QUIRICO, & FINE, JJ.

*Contract*, Construction, Performance and breach, Sale of real estate. *Practice, Civil*, Summary judgment. *Notice*. *Jurisdiction*, Specific performance. *Words*, "Null and void."

Where a mortgage contingency clause, appearing in a printed form of agreement for purchase and sale of a dwelling house, was silent as to any requirement of notice by the buyers whether a mortgage had been obtained within the thirty days allowed them, or by the sellers as to whether they were exercising their right under the clause to declare the agreement "null and void" on the buyers' failure to obtain a loan commitment, this court interpreted the clause, in the context of the entire agreement, to require that the party who wished to avail himself of its provisions give timely notice to the other, with the result that the sellers, who had given no prior indication of their intent to do so, were not entitled to inform the buyers, on the day appointed for the closing, that they treated the agreement as null and void in consequence of the buyers' failure to obtain a loan commitment until eight days after the thirty-day period had expired. [724-728] QUIRICO, J., dissenting.

Where, in an action on an agreement for purchase and sale of a dwelling house, a summary judgment entered in favor of the buyers did not state whether they were to receive specific performance, the case was remanded for a determination of the form of relief to which they were entitled. [728-729]

CIVIL ACTION commenced in the Superior Court Department on July 5, 1985.

A motion for summary judgment was heard by *Roger B. Champagne*, J., sitting under statutory authority.

*Daniel E. Goldrick* (*Pamela E. Karmazine* with him) for the defendants.

---

[1] Costas Tremouliaris.

[2] Barbara M. Pina.

*Robert A. Delle* for the plaintiffs.

FINE, J. The Tremouliarises agreed to buy and the Pinas agreed to sell a single family dwelling in Assonet. A purchase and sale agreement, signed by the parties on April 13, 1985, included a mortgage contingency clause which provided: "This agreement is subject to the BUYERS obtaining approval for mortgage financing in the amount of $49,400. The BUYERS agree to apply promptly for said mortgage loan from an institutional lender at current interest rates. If the BUYERS having used due diligence fail in good faith to obtain a loan commitment within 30 days then this agreement shall become null and void and all deposits shall be returned." The agreement was silent as to any requirement of notice by the buyers whether a mortgage had been obtained, or by the sellers whether they were exercising their right to declare the agreement null and void, nor was there a provision in the agreement that time was of the essence. The agreement was on a printed form supplied by a real estate broker with blank spaces in which only signatures, dates, dollar amounts, and reference to certain items in the dwelling to be included in the sale were inserted. It was also signed by one Pacheco, an associate in the brokerage firm acknowledged in the agreement to be acting as agent for the sellers, the Pinas.

The Tremouliarises paid the broker a deposit in the amount of $2,000, as called for in the agreement. They made reasonably prompt application to the Bristol County Savings Bank for a mortgage in the specified amount. By the thirtieth day following the signing of the agreement, however, they had not yet received notice of a mortgage commitment. The Pinas made no inquiry of the Tremouliarises upon the expiration of the thirty-day period about their arrangements for financing. Notice of approval of the mortgage came on May 21, 1985, eight days after the thirty-day period referred to in the mortgage contingency clause had expired. On June 5, 1985, the Tremouliarises notified Pacheco that the mortgage had been approved and that they were prepared to proceed to a timely closing. Pacheco did not tell them at that time that they were delinquent.

The first communication indicating that anything was amiss occurred on June 13, 1985, when the Pinas' attorney wrote a letter to the real estate broker stating that the Pinas would not be selling the property to the Tremouliarises because they had not obtained a mortgage commitment within the thirty-day period. In the letter, the attorney indicated that he had obtained that information from the Bristol County Savings Bank. The Tremouliarises were then notified by the broker that the deal was off. Their deposit was not returned.

The Tremouliarises brought this action for specific performance. Both the Tremouliarises and the Pinas moved for summary judgment with supporting affidavits setting forth the facts essentially as they have been outlined above; those facts are not in dispute. The motion for summary judgment brought by the buyers, the Tremouliarises, was allowed.

On appeal from the ensuing judgment the Pinas contend that the contract language, specifically the mortgage contingency clause providing that once the thirty-day period for obtaining a mortgage expires the agreement is "null and void," eliminates any further rights the Tremouliarises might have to the property. See *Miracle Revival Center Move of God Church* v. *Kindred*, 615 S.W.2d 257 (Tex. Ct. App. 1981). The Tremouliarises put forth a different interpretation of the agreement.[3] Neither the Pinas nor the Tremouliarises contend that the process of interpreting the agreement would be aided by a consideration of extrinsic evidence. Compare *Cullinet Software, Inc.* v. *McCormack & Dodge Corp., ante* 231, 236 (1986).

Unfortunately the particular document before us is obscure and has within it at least latent inconsistencies. A literal reading of the language of the mortgage contingency clause might well support the Pinas' interpretation. That clause appears to conflict, however, with a separate clause in the agreement, also touching upon financing, which provides: "Good and sufficient deed, subject to restrictions if any, to be delivered on or before [June 13, 1985]. Reasonable extension granted, if needed to

---

[3] They also rely on a waiver theory which raises factual issues inappropriate for resolution by summary judgment.

arrange financing or clear title." While this clause is not altogether free of ambiguity, it seems to allow a reasonable extension of the closing date if more time is needed for the Tremouliarises to arrange financing. Its presence is an indication that the parties contemplated that the agreement might remain alive as late as June 13, 1985, even if financing had not as yet been arranged by the Tremouliarises. This tends to undercut the Pinas' interpretation that the Tremouliarises' failure to obtain a mortgage by the thirtieth day caused the agreement automatically to become null and void.

In an attempt to reconcile the conflicting parts, we must ask "what the writing means as a whole." See *Clark* v. *State Street Trust Co.*, 270 Mass. 140, 151 (1930). Our analysis leads us to an interpretation which gives some effect to the "null and void" language, but not the critical significance which the Pinas attribute to it. Based upon that analysis, we agree with the Superior Court judge that the Tremouliarises were entitled to summary judgment.

We must construe the agreement according to the familiar principles stated in *Clark* v. *State Street Trust Co.*, 270 Mass. at 151-153, by Chief Justice Rugg:

> "The aim of all interpretation of writings is to ascertain the meaning intended to be attached to the words by the parties who used them, and to effectuate the true purpose of the parties as thus ascertained. All rules are ancillary to that dominating aim. . . . The construction of a written instrument to be adopted is the one which appears to be in accord with justice and common sense and the probable intention of the parties. It is to be interpreted as a business transaction entered into by practical men to accomplish an honest and straightforward end [citations omitted]. Equity looks through the form to the substance and purpose of the agreement and moulds its decree in accordance with what the parties may fairly be presumed to have intended. Every contract implies good faith and fair dealing between the parties to it. The courts always avoid, if

possible, any construction of a contract that is unreasonable or inequitable" (citation omitted).

See also *Waldo Bros.* v. *Platt Contracting Co.*, 305 Mass. 349, 355-356 (1940); *Fay, Spofford & Thorndike, Inc.* v. *Massachusetts Port Authy.*, 7 Mass. App. Ct. 336, 342 (1979).

We recognize, first, that the essence of the agreement was the effectuation of the sale of the property for $54,900. See *deFreitas* v. *Cote*, 342 Mass. 474, 477 (1961). The mortgage contingency clause served subsidiary purposes. Such a clause in a real estate purchase and sale agreement is usually included at the request, and for the benefit, of the buyer. By conditioning the agreement on the buyer's ability to obtain financing in a stated amount and on stated terms, such a provision enables the buyer to escape liability and to assure the return of his deposit should he be unable to obtain financing. See *deFreitas* v. *Cote*, 342 Mass. at 477; *Bossi* v. *Whalen*, 19 Mass. App. Ct. 966, 967 (1985). Such a clause may be of incidental benefit to the seller as well. By imposing a deadline, a mortgage contingency clause "provide[s] him with a date by which he could know whether the buyers would have financing and would be bound to go through with the purchase." *Bossi* v. *Whalen*, 19 Mass. App. Ct. at 967.

We think the only way the agreement can be interpreted as a rational instrument, satisfying the primary intent of the parties that the property be sold, as well as their subsidiary interests reflected in the mortgage contingency clause, is to recognize, even in the absence of a formal notice requirement, an implicit requirement that, to bring into play the "null and void" provision, one party communicate to the other some form of notice.

The buyer, we think, ought to give prompt notice to the seller if, within the time allowed, and, after diligent effort, he has been unable to obtain financing and he wishes, therefore, to terminate the agreement. If he gives timely notice, the agreement becomes null and void, and he is entitled to the return of his deposit. If he does not communicate his intention to terminate the agreement and does not request an extension,[4]

---

[4] We need not decide whether, under this agreement, the seller is obligated to grant such a request.

he runs the risk of losing his deposit and being compelled to perform. Such a construction protects the buyer's interest in being released from the contract if he should be unsuccessful in obtaining a mortgage. If the buyer neither exercises his power to terminate by giving notice, nor requests an extension, the seller has the right to declare the agreement null and void. If he pursues that avenue, however, he ought reasonably to make some inquiry of the buyer about financing. Inquiry, to be meaningful, must be made of the buyer rather than of a particular lending institution since it would be of no importance to the seller what the source of the financial assistance arranged by the buyer was so long as the buyer would be able to tender the full purchase price. See *deFreitas* v. *Cote*, 342 Mass. at 477. Contrast *Herrin* v. *Bouzianis*, 12 Mass. App. Ct. 904, 906 (1981). If the seller is reasonably dissatisfied with the buyer's financial arrangements and chooses not to go forward with the sale, he has the power to terminate the agreement. We think, however, that he has an implicit obligation on or about the thirtieth day, or at least before the buyer has arranged his financing, to communicate in some way to the buyer that he regards the agreement as "null and void." Return of the deposit would be one way for him to communicate that message.

Such an interpretation gives considerable scope to the "null and void" language and protects the seller's interest in knowing by the stated deadline whether the financing will be in place for the sale. If the seller does not exercise his power to terminate the agreement by giving timely notice that he regards the agreement as null and void, and, absent such notice from the buyer, the seller still has the protection of holding the buyer's deposit and the right to enforce against the buyer his obligations under the agreement.

Were we to adopt the sellers' construction of the language of the agreement, its purpose could be frustrated although the parties are fully capable of carrying it out. A period of uncertainty after the thirtieth day would be almost inevitable. Moreover, since the buyer may be incurring expenses in anticipation of acquiring the property, good faith, implied in every contract, see *Clark* v. *State Street Trust Co.*, 270 Mass. at

153, would require some communication by the seller if he chooses to call off the sale. Good faith would also require prompt return of the deposit if the buyer is being released from his obligations. In light of these considerations, we think the absence of an express reference to a notice requirement, such as is usually present in such agreements, was an oversight. We note that on other occasions the term "void" has been interpreted to mean "voidable." See, e.g., *Stewart* v. *Griffith*, 217 U.S. 323, 329 (1910); *Oakes* v. *Manufacturers' Fire & Marine Ins. Co.*, 135 Mass. 248, 249 (1883). See also 5 Williston, Contracts § 746 (3d ed. 1961).

The Tremouliarises gave no notice to the Pinas after the passage of the deadline in the mortgage contingency clause that they had failed to obtain a mortgage commitment. By failing to act, the Tremouliarises may have lost their right to the return of their deposit, and they may have become obligated to purchase the property. The Pinas did not exercise their right to terminate the agreement before the Tremouliarises' mortgage commitment came through. They made no inquiry of the Tremouliarises about financing; nor did they return the deposit or communicate any concern on their part to the Tremouliarises. As we interpret the agreement, in the circumstances, the Pinas were bound to go forward with the sale of the property. Since the financing was assured well in advance of the planned closing date, there would have been no impediment to the effectuation of the sale.

The judge acted properly, therefore, in allowing summary judgment for the Tremouliarises. He did not specify, however, whether the Tremouliarises were to receive specifc performance;[5] he ruled only that they should recover judgment. The complaint seeks specific performance. Some discretion exists as to the appropriate remedy in such a case, although "in the absence of significant equitable reasons for refusing such relief, specific performance of real estate sale agreements is appropriate." *Raynor* v. *Russell*, 353 Mass. 366, 367-368 (1967).

---

[5] Although we could have dismissed the appeal as premature, the merits having been fully argued, we have exercised our discretion to entertain it.

The affidavits are not adequate to enable us to rule definitively on the appropriate remedy.

Accordingly, we vacate the judgment and remand the case to the Superior Court for further hearing, at which evidence may be taken, for a determination of the form of relief to which the prevailing parties, the Tremouliarises, are entitled.

*So ordered.*

QUIRICO, J. (dissenting). The plaintiffs seek specific performance of an agreement executed on April 13, 1985, by them as the buyers, and by the defendants as the sellers, of a parcel of real estate for the price of $54,900, of which $2,000 was paid when the agreement was signed and the balance was to be paid at the time of closing, which was to be "on or before 60 days" from the date of signing. The one-page printed agreement included blank spaces in which to insert the names of the parties, the date, the street address and registry of deeds reference to the property being sold, the sale price, the amount of the down payment, the date of closing the transaction, date of occupancy, a provision conditioning the agreement on the buyers' ability to obtain certain financing, and places for signatures. Although the form bears a heading of "STANDARD FORM PURCHASE AND SALE AGREEMENT" it is more an outline of an agreement than a complete detailed agreement, and thus invites litigation.[1]

---

[1] The words "STANDARD FORM" in the title of the printed form appears to mean only that this form is "STANDARD" for use by brokers affiliated as franchisees or otherwise with the nationally advertised group of brokers operating under the title of "COLDWELL BANKER," which words are also printed in the heading of the form with which we are concerned. This form seems to have been devised as one more likely to be signed by a lay person without benefit of counsel than would be the case with a more detailed form of agreement. There are other printed forms entitled "STANDARD FORM PURCHASE AND SALE AGREEMENT" in common use which state an agreement in much greater detail. See such a form copyrighted by the Greater Boston Real Estate Board.

We are concerned primarily with the following provisions of the agreement of April 13, 1985: "The agreement is subject to the following terms and conditions: 1. Good and sufficient deed, subject to restrictions if any, to be delivered on or before 60 days from the below date. Reasonable extension granted, if needed to arrange financing or clear title . . . . 5. This agreement is subject to the BUYERS obtaining approval for mortgage financing in the amount of $49,400. The BUYERS agree to apply promptly for said mortgage loan from an institutional lender at current interest rates. If the BUYERS having used due diligence fail in good faith to obtain a loan commitment within 30 days then this agreement shall become null and void and all deposits shall be returned."

Among the undisputed facts are the following. The buyers first filed an application for a mortgage loan from an institutional lender on April 25, 1985. On May 13, 1985, which was thirty days after the signing of the agreement, they had not yet obtained a commitment for the $49,400 mortgage loan for which they had applied. There was no communication between the buyers and the sellers about that failure to obtain the loan by May 13, 1985. On or about May 15, 1985, counsel for the sellers communicated with the vice-president and mortgage officer of the lending institution to which the buyers had applied for the mortgage loan, and he was informed by that bank officer that the application for the loan had not yet been approved. On May 21, 1985, the lending institution informed the buyers in writing that the requested loan would be granted on certain stated terms and conditions, all of which were agreed to by the buyers. Again, there was no communication between the buyers and the sellers concerning the approval of the loan. On June 13, 1985, which was the date on or before which the parties agreed that the transaction would be closed, the buyers were ready, able and willing to close the transaction. However, the sellers refused to do so on the ground that the agreement had become null and void because the buyers had not obtained the mortgage loan commitment "within 30 days" of the signing of the agreement.

The purchase and sale agreement provides in par. 5 that "if the BUYERS having used due diligence fail in good faith to obtain a loan commitment within 30 days *then this agreement shall become null and void and all deposits shall be returned*". There is no occasion to quibble over the meaning of the words "null and void" when they are used in any legal sense as they were in par. 5. It is sufficient to say that "null" means having no legal or binding force and "void" means something of no legal force or effect. Those words as used in the language quoted from par. 5 of the April 13, 1985, agreement, when considering that paragraph alone, are not ambiguous, and they clearly require a conclusion that when the buyers failed to obtain their loan commitment by May 13, 1985, the purchase and sale agreement of April 13, 1985, ceased to have any legal or binding force or effect, and that all rights and obligations thereunder ceased to exist except for the provision that "all deposits shall be returned." The majority opinion recognizes this when it says that "[a] literal reading of the language of the mortgage contingency clause might well support the [sellers'] interpretation" that the agreement was null and void.

There is no other language in the purchase and sale agreement which requires a different conclusion. The buyers contend and the majority agree that there is such language in par. 1 of the agreement which says, "Reasonable extension granted, if needed to arrange financing . . . ." They contend that despite the buyers' failure to (a) obtain a loan commitment by May 13, 1985; (b) ask for an extension of the time for obtaining such a commitment; or (c) communicate with the sellers on that subject until June 13, 1985, they were nevertheless entitled to compel the sellers to convey the property to them on their request on or before June 13, 1985.

The reasoning of the majority operates on the assumption that the provision allowing the buyers thirty days to obtain a loan commitment was intended to benefit the buyers, and that "such a provision enables the buyer[s] to escape liability and to assure the return of [their] deposit should [they] be unable to obtain financing." The consequence of the buyers' failure to obtain the financing by May 13, 1985, assuming good faith

on their part to obtain it, depends on what the particular agreement says on that subject. The agreement before us says that the consequence of such a failure is that "this agreement shall become null and void, and all deposits shall be returned." Instead of this consequence prescribed by the clear and unambiguous language of the contract, the majority holds that "[b]y failing to act [before the deadline set in the mortgage contingency clause], the [buyers] may have lost their right to the return of their deposit, and they may have became obligated to purchase the property." This result completely belies the meaning of the words "null and void."

The "null and void" provision was not for the sole benefit of the buyers. By the terms of agreement the sellers committed themselves to sell their property on or before June 13, 1985, subject to various terms and conditions. One of those conditions was that the buyers obtain a loan commitment by May 13, 1985. The buyers did not obtain a loan commitment within that time, with the result that the agreement became "null and void." That language "provided [the sellers] with a date by which [they] could know whether the buyers would have financing and would be bound to go through with the purchase." *Bossi* v. *Whalen*, 19 Mass. App. Ct. 966, 967 (1985). When the buyers did not obtain the loan commitment by May 13, 1985, and did not, within that time limit, ask for an extension, the sellers were free to keep the property, to seek other purchasers, or otherwise deal with the property free from any further obligation to the buyers named in the agreement of April 13, 1985. They were not required to wait another thirty days after May 13, 1985, to see whether the buyers could arrange financing to purchase the property.

The majority hold, in effect, that the words "this agreement shall become null and void" mean instead that in certain circumstances the agreement may be declared null and void by one party by giving notice to that effect to the other party. There is no provision whatever in this agreement, whether in the printed or the written language, which mentions or requires the giving of any such notice. The majority opinion says: "We think the only way the agreement can be interpreted as a rational

instrument . . . is to recognize, even in the absence of a formal notice requirement, an implicit requirement that, to bring into play the 'null and void' provision, one party communicate to the other some form of notice." The opinion then describes various instances in which one party may or must give such a notice to the other, and the consequences of giving or not giving such a notice. This is followed by the statement that "[i]n light of these considerations, we think the absence of an express reference to a notice requirement, such as is usually present in such agreements, was an oversight."

There is nothing before the court to support a conclusion that the absence of a notice requirement was an oversight. Rather it is due to the fact that the broker provided, and the parties used, what the broker or its franchiser labeled a "STANDARD FORM PURCHASE AND SALE AGREE- MENT" for a transaction which was not exactly "standard." The function of the court in interpreting the agreement is not to redraft the agreement to include by implication a comprehen- sive schedule of notices between the parties to cause the "null and void" clause to take effect or to prevent it from taking effect. That is governed by clear and unambiguous language in the agreement. In interpreting the agreement before us, the court should not imply any provisions, whether granting ben- efits or imposing burdens, which probably would have been included in such an agreement if it had been drafted by counsel intending the accomplishment of this particular conveyance, but which provisions are not contained in this agreement. As- suming any burden of notice may properly be implied, it should be the responsibility of the buyers to notify the sellers that they have or have not obtained the loan commitment within the period delimited by the agreement and not a burden on the sellers to make inquiry on that subject.

In my opinion the words in par. 1 of the agreement that "[r]easonable extension granted, if needed to arrange financ- ing" do not mean that the thirty-day period allowed the buyers to obtain a loan commitment is automatically extended if the commitment is not obtained within thirty days. They mean that the buyers are permitted to ask the sellers to extend that

period; since the word "extension" is used in the agreement it means that the request must be made before the expiration of the original thirty-day period, otherwise the "null and void" provision takes effect. I believe that the language also means that the sellers are required to consider such a request, if seasonably made, and to act on it in good faith. However, the sellers are not obligated to grant an extension simply because it is requested. In any event, no such request was made by the buyers.

I conclude that the purchase and sale agreement became null and void upon the buyers' failure to obtain a loan commitment within the thirty days following the execution of the agreement, that the deposit of $2,000 made by the buyers upon the execution of the agreement and received and still held by the broker as provided in the agreement must be returned by the broker to the buyers, and that the buyers are not entitled to specific performance of conveyance by the sellers. I express no opinion on the matter of interest which is covered by the agreement and was not mentioned in briefs or oral argument.

My dissent to this point has concentrated on the interpretation of the printed and written purchase and sale agreement because that is the focus of the majority opinion. However, there are matters of procedure which require attention. This case is before us on the appeal of the sellers from the allowance of a motion of the buyers for summary judgment. Each party filed a motion for summary judgment against the other. The buyers (plaintiffs) filed their motion on February 24, 1986, with two affidavits and a memorandum of law. The sellers (defendants) filed their motion on March 10, 1986, with an affidavit and a memorandum of law. Neither party filed opposing or counter affidavits. Mass.R.Civ.P. 56, 365 Mass. 824 (1974). However, the differences between the affidavits do not relate so much to the facts as to the interpretation of the agreement and the application of the law to the facts.

On the margin of the buyers' motion for summary judgment there is a handwritten entry of: "March 13, 1986 After hearing and upon consideration, motion *allowed*," followed by the name of the judge. On March 18, 1986, the judge entered an

order for judgment that "Plaintiffs Taki Tremouliaris and Costas Tremouliaris recover of the defendants Joseph D. Pina and Barbara M. Pina, judgment as a matter of law." The relief requested by the buyers in their amended complaint was specific performance by conveyance of the real estate in question. It is uncertain what kind of relief the trial judge intended, whether specific performance, money damages or any other form of relief. I agree with the majority that when the trial court grants relief it must declare the form of the relief.

There is nothing in the record to indicate what action, if any, the trial judge took on the sellers' motion for summary judgment. It may not be unreasonable for us to infer that since the judge granted the buyers' motion for summary judgment he probably would deny, or at least would not grant, the sellers' motion. If the judge took any action on that motion, it is desirable that such action be noted in the record.

On the basis of the record before us there are several unresolved questions of fact which divide the parties, and therefore the motion for summary judgment should not have been allowed. One of the questions of fact is whether the sellers waived their right to claim that the purchase and sale agreement became null and void upon the buyers' failure to obtain a loan commitment by May 13, 1985, or to request an extension of the time limit. Whether there was a waiver is a question of fact the answer to which cannot be assumed by the judge in acting on the motion for summary judgment. The buyers argue in their brief that there was such a waiver by the sellers. "Waiver, like agency or negligence, is dependent on the totality of circumstances and is not readily decided on affidavits." *Bossi* v. *Whalen*, 19 Mass. App. Ct. at 968. Another question of fact is whether the buyers complied with the requirements of the agreement in seeking the mortgage loan. On the basis of the buyers' motion and supporting documents it appears that they did not apply for a loan commitment until twelve days after signing the purchase and sale agreement, thus leaving only eighteen of the original thirty days in which to obtain a loan commitment. That raises a question of fact whether the buyers complied with the requirement that they "apply prompt-

ly" for the loan commitment, and whether they used "due diligence" in the matter. As shown on the record, the loan commitment was not obtained until thirty-eight days after the agreement was signed. I have cited only two obvious questions of fact which preclude the allowance of the motion by the buyers (plaintiffs) for summary judgment in their favor. I believe that there are additional unresolved questions of fact but it is not necessary to identify or discuss them for the purposes of this decision.

I would reverse the order allowing the plaintiffs' motion for summary judgment and let the case stand for trial unless the parties can reach an agreement on all of the facts and submit the agreement as a case stated for decision by the trial court.