KAREN B. CHURGIN vs. WILLIAM V. HOBBIE.[1]

No. 94-P-1864.

Essex. June 22, 1995. - October 6, 1995.

Present: PERRETTA, KASS, & LENK, JJ.

*Real Property*, Sale, Purchase and sale agreement, Mortgage. *Mortgage*,
  Loan commitment. *Contract*, Sale of real estate. *Consumer Protection
  Act*, Sale of commercial property.

In the circumstances of an agreement for the sale of a commercial prop-
  erty, the seller's agreement to the extension of the closing date did not
  operate to extend by implication the notice of cancellation provision of
  a mortgage financing condition clause, and, in the absence of any ex-
  press extension of the mortgage financing condition, upon the buyer's
  default the seller was entitled to retain the buyer's deposit. [305-307]
The record of an action brought to determine the entitlement to funds de-
  posited by a prospective buyer under a purchase and sale agreement for
  commercial property did not support a claim by the seller for damages
  under G. L. c. 93A. [307-308]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 13, 1992.

The case was heard by *Richard E. Welch III*, J.

*Gregg J. Wilson* for the plaintiff.

*S. Peter Gorshel* for the defendant.

KASS, J. Under an agreement for the sale of a commercial
property, the buyer conditioned his performance on his ob-
taining a first mortgage loan of $300,000 "on or before 45
days of closing." To have the benefit of the financing condi-
tion, the buyer, if he found himself unable to obtain a com-

---

[1]The action began with a complaint in interpleader by Mr. Charles M.
Belmer, Jr., the seller's lawyer, seeking to determine who was entitled to a
deposit of $46,875 held by him. Mr. Belmer paid the deposit funds into
court and the case proceeded as one of cross claims, each claiming
entitlement to the deposit funds, between Karen B. Churgin and William
V. Hobbie.

mitment for a loan in the designated amount, was obliged to notify the seller of that inability by that same cutoff date. The finance deadline, November 24, 1991, passed without notice from the buyer. On the particular facts of the case, we conclude that a later extension of the closing date did not extend the financing deadline, and that the seller is entitled to retain the buyer's $46,875 deposit. In so deciding, we reverse a judgment entered in the Superior Court in favor of the buyer.

We summarize the facts, which we take from excellent findings dictated by the Superior Court judge who heard the case without jury.

Dr. Karen B. Churgin[2] maintained a veterinary practice at 105 Main Street, Wenham (the locus). On July 8, 1991, Dr. Churgin (the seller) entered into an agreement with Dr. William V. Hobbie, a veterinarian (the buyer), to sell to him the locus for $375,000, including "fixtures used in the practice of veterinary medicine," and, by separate agreement executed on the same date and for separate consideration, her veterinary practice known as Great Pond Veterinary Clinic. That segment of the transaction was completed and the buyer set up practice in the locus, which he occupied as a tenant under a written lease.

The real estate agreement, which made time of the essence, set a closing date of January 8, 1992. Clause 22 of the printed agreement[3] provided in pertinent part:

> "The BUYER is applying for a first mortgage of $300,000.00 according to an initial amortization schedule of 15-20 years [at] the usual rate of interest prevailing at the time of the Bank commitment or the signing of the mortgage note. . . . This financing . . . shall be

---

[2]Dr. Churgin's name before marriage was Wolf. The briefs and record-appendix in the case describe her as Karen B. Wolf, also known as Karen B. Churgin. The name she signed on the purchase and sale agreement was Churgin and she so identified herself when testifying. We use the name she prefers.

[3]The agreement was prepared on a printed form published by The Greater Salem Board of Realtors, Inc.

obtained by the BUYER on or before 45 days of clos-
ing, failing which all monies shall be returned, and all
other obligations of all parties shall cease and this
agreement shall be void and without recourse to the
parties hereto, provided however, that the BUYER noti-
fies the SELLER in writing of their [*sic*] inability to
obtain financing on or before this date. Failure to so no-
tify will not excuse the BUYER from performance
hereunder."

As previously noted, forty-five days before January 8, 1992,
fell on November 24, 1991. On a back page, following the
signature blocks on the printed agreement form, there were
two extension forms, the first, an "Extension for Financing"
and a second an "Extension for Performance."

The buyer, apparently confident of his financial muscle,
had not yet applied for mortgage financing by the time the
financing deadline of November 24, 1991, rolled around and
did not avail himself of his right to withdraw from the agree-
ment by reason of not having obtained financing. A letter to
the buyer from the seller's lawyer dated December 10, 1991,
to the effect that the seller was anxious to close on the agreed
upon January 8 date, stimulated the buyer to begin discus-
sions with area banks about a mortgage loan. From a poten-
tial bank lender, the buyer received the unpleasant news that
the bank would require a site assessment of the locus for haz-
ardous or toxic pollutants. See G. L. c. 21E, the Massachu-
setts Oil and Hazardous Material Release Prevention Act.
The locus had once been used as a gas station, a fact known
to the buyer but whose implications he had not appreciated.

By letter dated January 2, 1992, addressed to the seller's
lawyer, the buyer wrote that he had been given to under-
stand that the requisite hazardous substance inspection
might take some months. "Therefore," the buyer continued,
"I will be unable to close on this sale on January 8, and ask
for an extension until such time as financing arrangements
are completed. As soon as I have a projected date for the
closing I will notify you." On January 7, 1992, and January
8, 1992, seller and buyer successively signed a written exten-

sion setting the time for performance as March 9, 1992. Counsel for the seller had prepared the extension document using the forms on the original purchase and sale agreement. The provision for extending the time for financing was struck.

A week later, the buyer learned from his environmental consultant that there might be buried automobile parts on the site. By letter dated January 22, 1992, the buyer purported to give notice to the seller within forty-five days of the closing date, as extended, of his inability to obtain financing and requested the return of his deposit. At that time, the buyer had not yet been told by the bank to which he had applied that a loan would not be approved, although the bank did reject his application on March 5, 1992, because of the likelihood of site contamination. The seller has declined to authorize the escrow holder (her lawyer) to return the deposit.[4]

The trial judge ruled in favor of the buyer on the ground that the extension of the closing date implicitly extended the financing date because the financing date was tied to the closing date.

The primary beneficiary of a mortgage financing condition in an agreement for the sale of real estate is the buyer. *deFreitas* v. *Cote*, 342 Mass. 474, 477 (1961). *Bossi* v. *Whalen*, 19 Mass. App. Ct. 966, 967 (1985). *Tremouliaris* v. *Pina*, 23 Mass. App. Ct. 722, 726 (1987). To keep the financing condition from turning into an open-ended option for the buyer, clauses expressing a financing condition classically impose a deadline for exercise of the financing condition — through notice of cancellation — by the buyer. The seller then has a date when the deal may abort and the property return to the market or, following which, the seller knows the buyer is bound to go through with the purchase. *Bossi* v. *Whalen*, 19 Mass. App. Ct. at 967. *Tremouliaris* v.

---

[4]Section 21 of the agreement provided that should the buyer fail to perform, the deposit "shall be retained by the seller as liquidated damages." The buyer has not argued that the amount of the deposit was disproportionate to the seller's damages. Compare *Lynch* v. *Andrews*, 20 Mass. App. Ct. 623, 627-628 (1985), with *Schrenko* v. *Regnante*, 27 Mass. App. Ct. 282, 285-287 (1989).

*Pina,* 23 Mass. App. Ct. at 726. "If [the buyer] gives timely notice, the agreement becomes null and void, and [the buyer] is entitled to the return of his deposit. If [the buyer] does not communicate his intention to terminate the agreement and does not request an extension, [the buyer] runs the risk of losing his deposit and being compelled to perform." *Id.* at 726-727.

Of course, the financing condition deadline may be extended. See *Madden* v. *Estin,* 28 Mass. App. Ct. 392 (1990). The trial judge reasoned that the buyer, knowing that the possibility of a hazardous waste question had cropped up and understanding that its favorable resolution was essential to obtaining mortgage financing, must have intended to extend the financing condition as well. The judge also found that the seller's lawyer must have known that the buyer wanted additional time to meet the financing condition, knowledge that might be imputed to his client if he were acting as her agent. See *Flynn* v. *Wallace,* 359 Mass. 711, 717-718 (1971). Although the judge's findings about the intention of the parties are entitled to respect unless clearly erroneous, even as to findings based on documentary evidence, *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank,* 395 Mass. 614, 621 & n.11 (1985), we are of opinion that the judge was clearly in error in giving weight to the unexpressed intentions of the buyer in the face of altogether contrary provisions in written instruments subscribed by the parties. See *Champlin* v. *Jackson,* 317 Mass. 461, 464 (1945); *Edgar H. Wood Assocs., Inc.* v. *Skene,* 347 Mass. 351, 360 (1964).

When the buyer on January 2, 1992, first raised the prospect of needing an extension, the time for opting out of the agreement based on the financing condition had already gone by. He was on the hook. If, in effect, a new financing condition were to be introduced, it is reasonable to expect that this would be expressly requested and expressly incorporated in the document of extension. The reverse occurred. The buyer in his letter asked only "for an extension until such time as financing arrangements are completed," not so that a commitment might be obtained, and went on to ask that the

seller "arrange to have the basement cleaned of debris and fuel oil leakage, and the plumbing leak in the janitorial closet repaired as well as the sheetrock damaged by the leak." That is not the language of a buyer who thinks the transaction is still conditional. More to the point, the document of extension expressly deleted the provision that provided for extension of the financing condition and granted only an extension for performance. The parties have so clearly expressed themselves in their document that a court should not "undertake to be wiser than the parties." *Guerin* v. *Stacy*, 175 Mass. 595, 597 (1900).

A mortgage financing condition, as we have observed, has characteristics of an option in that one party has a unilateral right to proceed or not proceed with the transaction. The selling party is obliged to keep the property off the market while the buying party explores its ability to finance. For the same reasons that optionees are required to turn their corners squarely in exercising option rights, see *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 73 (1980), it is not too much to ask that a party adhere closely to the notice of cancellation provision of a financing condition clause. Of course it is open to the parties to establish a new financing condition or to extend a financing condition, but such an extension should be express and not left to implication from extension of the date of performance of the contract.

In addition to her contract claim, the seller made, and continues to press, a G. L. c. 93A claim. The judge found that the buyer, untutored in the perils of the modern real estate transaction, was unaware of the potential difficulties that might arise from even the possibility of toxic pollution of the locus. Instead, the buyer had proceeded in a belief that his net worth and his "track record" would enable him to obtain financing without difficulty.[5] Both parties, the judge found, had acted in good faith. Those findings are supported by the

---

[5]Indeed, in an early stage of negotiations, the seller had offered to provide the financing and the buyer had turned aside the offer in expectation that he could do better with bank financing.

evidence. Ineptitude there may have been; bad faith and unfair practice there was not. "[N]ot every unlawful act is automatically an unfair (or deceptive) one under G. L. c. 93A." *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109 (1979). *Levings* v. *Forbes & Wallace, Inc.*, 8 Mass. App. Ct. 498, 504 (1979).

The judgment for the plaintiff-in-cross-claim Hobbie is reversed and judgment on that claim is to enter for the defendant-in-cross-claim Churgin. The amended judgment dismissing Churgin's cross claim is vacated and a new judgment is to enter for Churgin on her cross claim for breach of contract and dismissing the remainder of her cross claim.

*So ordered.*