Agnes, A.J.
BACKGROUND
This case arises out of an agreement for the purchase of real estate between the plaintiff Peter Wojtkin, the prospective buyer (hereafter, “buyer”) and the defendants Richard H. and Mary J. Gibson, the sellers (hereafter, “sellers”). The buyer seeks a declaratory judgment establishing his right to recover a $10,000 deposit he paid in escrow in January 1990 when he and the seller signed an agreement for the sale and purchase of property located at 302 High Street in *150 Andover, Mass. Each of the parties has filed a motion for summary judgment under Mass.R.Civ.P. 56.
The essential facts are not in dispute. The seller and buyer signed a form agreement on or about January 26, 1990 that is captioned “Standard Form Purchase and Sale Agreement” printed by the Greater Boston Real Estate Board (hereafter, “agreement”). Plaintiffs Verified Complaint (hereafter, “P. Comp.”) at 2 para. 8; Defendant Gibson's Memorandum of Law in Support of Motion for Summary Judgment (hereafter, “Gibson Memo”), exhibit 1. It contains a provision that the seller agrees to sell and the buyer agrees to buy the land and buildings located at 302 High Street in Andover (hereafter, “property”). The agreement specifies a total purchase price for the property ($212,500) and explains that the buyer had previously deposited $1,000 as a binder on an offer to purchase and was depositing an additional $9,000 in consideration for the sellers’ promise to sell. The date of the closing was agreed to be “no later than August 1, 1990," although the parties could agree to an earlier date. Gibson memo, exhibit 1, Agreement, para. 8 & Binder A, para. 31. The parties agreed that defendant DeWolfe New England, one of the two brokers, would hold the deposits by the buyer “in escrow.” The agreement also provides that “(i]f the buyer shall fail to fulfill the buyer’s agreements herein, all deposits made hereunder by the buyer shall be retained by the seller as liquidated damages and this shall be the seller’s sole remedy.” Gibson Memo, exhibit 1, Agreement, Clause 21. The agreement also includes clause twenty-eight that is entitled “construction of agreement.” This provision states in part that the agreement is to be construed as a Massachusetts contract, that it sets forth the entire contract between the parties and that it “may be can-celled, modified or amended only by a written instrument executed by the seller and the buyer.”
The agreement also includes an attached “rider” that is signed by the parties. The rider contains 12 additional clauses. Clause thirty provides, in part, that the agreement “is expressly contingent” on the buyer obtaining a variance from the Town of Andover to allow him to use the property for a dental office. This provision also requires the buyer to file an application for a zoning variance within 30 days of the agreement and “to pursue the application with due diligence and in good faith.” This provision provides further that “(i)f the said application is denied on or before June 1, 1990 or if no zoning variance is issued on or before June 1, 1990, then, at buyer’s option, this agreement shall be of no further force and effect and shall be rescinded and terminated.” Finally, clause thirty contains language giving the buyer the “right to waive this contingency.”
The agreement also contains a provision relating to financing by the buyer. In clause thirty-two,
[t]he buyer agrees to apply promptly for a mortgage loan of not more than $165,000 for a term of not less than 20 years at the prevailing rate of interest. If the buyer, having used all due diligence, fails to obtain a written commitment for such a loan on or before forty-five days after receipt of a zoning variance for use of the premises as a dental office, then, at buyer's option, all payments made hereunder bj¡r the buyer with accrued interest shall be refunded and all other obligations of the parties hereto shall cease and this agreement shall be void and without recourse to the parties hereto.
The agreement also includes a provision in clause forty which deals with notice. It provides in relevant part that “(ujnless otherwise specified herein, any notice to be given hereunder shall be in writing and signed by the party or the party’s attorney and shall be deemed to have been given” to each party when hand delivered, mailed by registered mail or faxed to the buyer with a copy to his attorney or to the seller’s attorney as the case may be.
The buyer did not obtain a variance from the Town of Andover for use of the property as a dental office and did not secure a written commitment for a mortgage loan for the property by June 1, 1990 or by August 1, 1990. The buyer did not give written notice to the sellers by June 1, 1990 or by August 1, 1990 that he failed to obtain the variance, or a commitment for a mortgage. The buyer did not give written notice to the sellers by June 1, 1990 or by August 1, 1990 that he was exercising either of his options under clause thirty or thirty-two of the agreement. Gibson Memo, exhibit 2 (deposition of Mary Gibson) at 88-90, 130, 141-42; exhibit 3 (deposition of Peter Wojtkun) at 57. Prior to August 1, 1990, the sellers did not engage in any violation or breach of the agreement. Gibson Memo, exhibit 3 at 58.
There is evidence in the record that the buyer filed an application for a variance with the Zoning Board of Appeals of the Town of Andover and that he applied for a mortgage loan with the Lawrence Savings Bank. Gibson Memo, exhibit 3 (deposition of Peter Wojtkun) at 24-25. But see Gibson Memo, exhibit 5 (letter dated April 16, 1999 from Lee Dickey, senior vice-president of the Lawrence Savings Bank stating that there was no record at the bank of a loan application by the buyer). There is evidence that the buyer advised the bank that he would return to “process” the application as soon as he was granted the variance. Gibson Memo, exhibit 3 (deposition of Peter Wojtkun) at 39. There is evidence that the buyer did not pursue the loan application and “stopped the process” once he determined that he was unable to obtain a variance by June 1, 1990. Gibson Memo, exhibit 3 (deposition of Peter Wojtkun) at 39-49. There is also evidence that the buyer was informed by the town that he had to withdraw his application (or else it would be denied) and reapply due to the retirement of a board member. Gibson Memo, exhibit 3 (deposition of Peter Wojtkun) at 28-29 & exhibit 4; Affidavit of Plaintiffs Counsel Authenticating Exhibits and Deposition Transcripts *151 (hereafter, “P. Counsel Aff.”), exhibit C (Affidavit of broker Joseph Doherty) and exhibit E (Affidavit of Peter Wojtkun).
There is also evidence that prior to June 1, 1990, the buyer believed he “exercised his option” when he orally informed the broker for the sellers, J.B. Doherty & Associates, Inc., that he could not obtain the variance and could not perform his obligations under the contract. P. Comp., at 4 para. 15; Gibson Memo, exhibit 3 (deposition of Peter Wojtkun) at 33; P. Counsel Aff., exhibit B & E. There is evidence that prior to June 1, 1990, Mr. Doherty, the broker for the seller, made it clear to the buyer that he (Doherty) was working for the seller as a broker. P. Counsel Aff., exhibit F at 11. Further, there is evidence that the buyer kept Mr. Doherty informed of his activities on a regular basis throughout the period from January to August 1990. P. Counsel Aff., exhibit F at 24.
There is also evidence that sometime before June 1, 1990, the buyer informed one of the brokers, Mr. Joseph Doherty, that he had an interest in extending the time to obtain a variance and a mortgage loan for the property in question and that if he couldn’t get an extension he wanted his deposit returned. P. Comp, at 4, para. 15. There is evidence that at some point after June 1, 1990, the matter of an extension was discussed with the seller as well. Gibson Memo, exhibit 6 at 30-31. In this regard, buyer’s attorney sent a letter to the seller’s attorney dated July 26, 1990 proposing a one-year extension of the agreement subject to certain conditions. Gibson Memo, exhibit 7. The seller and the buyer did not agree to any extension of the agreement. P. Counsel Aff., exhibit B. The buyer did not purchase the property by August 1, 1990. P. Comp, at 4, para. 16. The buyer sought the return of the funds deposited in escrow but the seller has refused to agree to this demand. P. Counsel Aff., exhibit E.
DISCUSSION
I. Motions for Summary Judgment
“A motion for Summary Judgment under Mass, y judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). There are settled guidelines a trial judge must observe in passing on a motion for summary judgment.
Rule 56(c) of the Massachusetts Rules of Civil Procedure provides that a judge shall grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” In considering a motion for summary judgment, the court does not “pass upon the credibility of witnesses or the weight of the evidence (or) make (its) own decision of facts.” A court should not grant a party’s motion for summary judgment “merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial.” Instead, the court should only “determine whether a genuine issue of material fact exist(s).” When the court considers the materials accompanying a motion for summary judgment, “the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.” “Also, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment.”
Attorney General v. Bailey, 386 Mass. 367, 370-71 (1982) (citations omitted).
II. The Seller is entitled to judgment because the buyer failed to obtain a variance and a commitment for a mortgage loan by June 1, 1990 and did not exercise his option to terminate the agreement in a timely manner.
In Tremoulis v. Pina, 23 Mass.App.Ct. 722 (1987), the Appeals Court considered the terms of a purchase and sale agreement that included a provision in which the buyer was required to obtain a mortgage loan within thirty days. The clause in question provided that if the buyer used due diligence and acted in good faith, but could not obtain approval for such a loan within thirty days the agreement would be “null and void and all deposits shall be returned.” Id. at 723. Such a provision, the court explained, benefits both the buyer and the seller. The provision amounts to an escape clause for the buyer who through no fault of his or her own is unable to obtain financing. Likewise', the provision benefits the seller by establishing a deadline after which the seller may assume that the buyer intends to go through with the sale. Id. at 726. See Bossi v. Whelan, 19 Mass.App.Ct. 956 (1985). However, in Tremouliaris the court recognized that the only way to ensure that such a contingency clause serves its intended purpose[1] is to recognize that it implies an obligation on a party who wishes to take advantage of it to give notice to or make an inquiry of the other side.
We think the only way the agreement can be interpreted as a rational instrument, satisfying the primary intent of the parties that the property be sold, as well as their subsidiary interests reflected in the mortgage contingency clause, is to recognize, even in the absence of a formal notice requirement, an implicit requirement that, to bring into play the “null and void” provision, one party communicate to the other some form of notice.
Id. The court then considered three alternative scenarios.
*152 First, in a situation in which the buyers are unable to obtain financing and desire to escape from the agreement, they have an obligation to act before the deadline.
The buyer, we think, ought to give prompt notice to the seller if, within the time allowed, and after diligent effort, he has been unable to obtain financing and he wishes, therefore, to terminate the agreement. If he gives timely notice, the agreement becomes null and void, and he is entitled to the return of his deposit. If he does not communicate his intention to terminate the agreement and does not request an extension,[2] he runs the risk of losing his deposit and being compelled to perform.
Id. See also Kulakowski v. Leavitt, 1996 Mass.App.Div. 159, 161 (“[TJhe buyer may not unilaterally alter the requirements of the contingency clause and still seek to take advantage of its terms. If the buyer wishes to escape liability for failing to purchase, he must fully comply with the requirements of the financing contingency agreed to by the seller”).
Second, in a situation in which the sellers, after the thirty-day deadline has passed, desire to bring to an end their obligation to make the property available for sale to the buyers, they have an obligation to inquire of the buyers if they wish to terminate the agreement.
If the buyer neither exercises his power to terminate by giving notice, nor requests an extension, the seller has the right to declare the agreement null and void. If he pursues that avenue, however, he ought reasonably to make some inquiry of the buyer about financing ... If the seller is reasonably dissatisfied with the buyer's financial arrangements and chooses not to go forward with the sale, he has the power to terminate the agreement . . . Return of the deposit would be one way for him to communicate that message.
Id. at 727. In Tremouliaris, the court also discussed a third alternative in which neither party acts under the contingency clause. In a case in which the buyers fail to give notice that they are unable to obtain financing, and the sellers make no inquiry about the buyers’ financial arrangements and do not return the deposit, the agreement remains in effect. “(T]he seller still has the protection of holding the buyer’s deposit and the right to enforce against the buyer his obligations under the agreement.” Id. at 727. Thus, in Tremouliaris, the court rejected the position asserted by the seller that the agreement automatically terminates or becomes “null and void” once the thirty-day deadline passes without the buyers obtaining their financing because such an interpretation of the agreement would frustrate its main purpose — the sale of the property — in a case in which the parties are fully capable of performing on or before the date of the sale. Id [3] The outcome in Tremouliaris is consistent with this analysis. The Appeals Court rejected the seller's claim for the right to keep the deposit and ordered that a judgment enter on behalf of the buyers because the buyers had obtained financing before the time established for performance under the agreement and the sellers had refused to go ahead with the sale on grounds that the buyers had not complied with the thirty-day contingency clause. Id. at 728-29.[4]
The facts of the instant case fall within the scope of the third scenario discussed by the Appeals Court in Tremouliaris. Here, there is no dispute that the buyer had until June 1, 1990 to obtain a commitment for a mortgage loan and a variance, or the option to terminate the agreement and obtain the return of the deposit. Indeed, the view that the buyers have an obligation to act prior to the deadline contained in the contingency clause in order to escape from their obligations under the agreement is strengthened by the fact that the clause m this case contains specific language that describes the contingency as one that makes the agreement terminable “at buyer’s option.” Gibson Memo, exhibit 1, Agreement, clause 30. See also Churgin v. Hobble, 39 Mass.App.Ct. 302, 306-07 (1995).[5]
This interpretation of the financing contingency contained in clause thirty of the agreement is also supported by other, language in that clause which gives the buyer the “right to waive this contingency.” In the event of a waiver by the buyer, this provision states that “this agreement shall remain in full force and effect.” There is no requirement that the buyer give notice to the seller in order to exercise this right. Thus, by its own terms, clause thirty provides that if the buyer does not exercise the contingency and thereby “waives” it, the contract remains in full force and effect.
The buyer in this case maintains that even if the Tremouliaris case leads to the interpretation of the contingency clause set forth above, there is nonetheless a material fact in dispute, namely whether the sellers received notice. The buyer points to the evidence that prior to June 1, 1990, the seller’s broker was made aware that the buyer was unable to obtain a variance or financing. The buyer’s position is that he was negotiating for an extension of the agreement or for a modification of its terms, but that in any case the sellers had notice that the deal was not going to happen prior to the contingency deadline and long before the date established for performance. The problem with this argument is two-fold. First, under the terms of the agreement, notice to the seller’s broker is not notice to the seller. Gibson memo, exhibit 1, Agreement, clause 40. Moreover, the agreement provides that notice is effectively given to the seller only when the writing is delivered to the seller. Second, clause forty of the agreement also includes a requirement that ”[u]nless otherwise specified herein, any notice to be given hereunder shall be in writing and signed by the party or the party's attorney.” (Emphasis added.) Thus, if the buyer was required to give notice *153 to the sellers prior to June 1, 1990 in order to effectively exercise the escape clause in the agreement, it was required to be in writing. See Rocci v. Massachusetts Accident Co., 222 Mass. 336, 344 (1916) (Rugg, C.J.) (“It is an elementary rule in the interpretation of contracts that whenever reasonably practicable every word shall be given effect. It must be presumed that words have been employed for the purpose of expressing the intent of the parties”). The agreement provides that “any” notice that is required to be given must be in writing and leaves no room for interpretation.
III. There are no material facts in dispute regarding whether the buyer pursued an application for a zoning variance and for financing with due diligence
The sellers also argue that they are entitled to summary judgment because the buyer did not act in good faith and exercise due diligence to obtain a zoning variance and financing. See Lynch, supra, 20 Mass.App.Ct. at 625 (court observes that while what constitutes diligence is a question of law, whether someone acted with diligence is a question of fact). Viewing the evidence in the light most favorable to the buyer, there is evidence that the buyer submitted an application to the Zoning Board for the required variance to conduct the business of dentistry. Even if we assume that a municipal official advised him to withdraw the application because due to the retirement of a member of the board the application would be denied, the buyer’s subsequent failure to resubmit it because he did not believe there was sufficient time for it to be approved prior to the June 1, 1990 deadline is not adequate to meet his obligation to act in good faith and with due diligence. The effort that must be made by the buyer in a case such as this is “activity reasonably calculated to obtain the approval by action or expenditure not disproportionate in the circumstances.” Stabile v. McCarthy, 336 Mass. 399, 402-03 (1957). In Stabile, the buyer’s obligation to perform under a purchase and sale agreement was conditioned on obtaining town approval for a subdivision plan. In concluding that the buyer had not acted in good faith and with due diligence, the court pointed out that although he had prepared a plan and discussed it with town officials, he did not file it and prosecute it. Id. at 406. Here, the buyer’s decision to withdraw the application prior to the deadline and then not to resubmit it because he didn’t think there was sufficient time falls short of his obligation to act in good faith and with due diligence. “The provision cannot be viewed as creating a mere option in the buyer to purchase without any requirement of affirmative action on his part.” Sechrest v. Safiol, 383 Mass. 568, 571 (1983). See also Goodman v. Blum, 1993 Mass.App.Div. 88, 90; Contrast Cutler v. Beckett, 1996 WL 1185041 (Superior Court 1996) (“At no time did Beckett abandon his efforts to get town approval for his subdivision”).
IV. Consequences of the buyer’s breach
In light of buyer's failure to give written notice to the sellers by June 1, 1990, the absence of any evidence that the sellers waived this benefit, and the buyer’s failure to perform the agreement on August 1, 1990, or. in the alternative, the buyer’s failure to act in good faith and with due diligence to obtain a variance by June 1, 1990, the court is required to respect the terms of the liquidated damages clause and declare that the seller has a right to obtain the deposits supplied by the buyer. See Lynch v. Andrews, 20 Mass.App.Ct. 623, 627, fur. rev. den., 396 Mass. 1102 (1985).
ORDER
For the above reasons, the motion for summary judgment filed by the plaintiff Peter Wojtkun is DENIED. The motion for summary judgment filed by the defendant Mary J. Gibson is ALLOWED and the court hereby DECLARES and ADJUDGES that the sellers have the right to collect the funds ($10,000 plus accumulated interest) that were deposited in escrow by the buyer under the purchase and sales agreement. Judgments in accordance with this order shall be entered by the clerk.

The agreement signed by the buyer and seller in this case is far from a model of clarity. It makes no sense, therefore, to say simply that its words should be given their plain meaning. The court's duty is to “construe the contract with reference to the situation of the parties when they made it and to the objects sought to be accomplished.” Bryne v. City of Gloucester, 297 Mass. 156, 158 (1937). The goal of parties to a purchase and sale agreement is to bring about the sale of real estate. See deFreitas v. Cote, 342 Mass. 474, 477 (1961). Contingency clauses are subservient to that end and are designed to serve the interests of one or the other' of the parties, but not to make the validity of the agreement conditional on the occurrence of a future event. See Stabile v. McCarthy, 336 Mass. 399, 403 (1957). They should not be interpreted so as to become the tail that wags the dog. See Clark v. State Street Trust Co., 270 Mass. 140, 151-53 (1930) (Rugg, C.J.) (Rules of construction for the interpretation of writings in relation to business transactions must advance the goal of discovering the “true purpose of the parties”).

In Tremouliaris, the court pointed out that the purchase and sale agreement contained a separate clause that established a specific deadline for performance, but which also included the following additional language that was arguably in conflict with the terms of the contingency clause: “i reasonable extension granted, if needed to arrange financing or clear title.” Id. at 724-25.

“Were we to adopt the sellers’ construction of the language of the agreement, its purpose could be frustrated although the parties are fully capable of carrying it out. A period of uncertainty after the thirtieth day would almost be inevitable. Moreover, since the buyer may be incurring expenses in anticipation of acquiring the property, good faith, implied in every contract, would require some communication by the seller if he chooses to call off the sale." Tremouliaris, 23 Mass.App.Ct. at 727-28.

The plaintiff-buyer in the present case is not aided by the view taken by the dissenting judge in Tremouliaris. According to Judge Quirico, the plain language of the contingency clause requires the conclusion that when thirty days passed and the buyers failed to obtain their loan commitment, the agreement *154 ceased to have any legal force and became null and void. Id. at 731-32. In his view. ”[t]he function of the court in interpreting the agreement is not to redraft Ure agreement to include by implication a comprehensive schedule of notices between the parties to cause the ‘null and void’ language to take effect or to prevent it from taking effect.” Id. at 733.

In Churgin, Judge Kass made this observation: “A mortgage financing condition, as we have observed, has characteristics of an option in that one party has a unilateral right to proceed or not proceed with the transaction. The selling party is obliged to keep the property off the market while the buying party explores its ability to finance. For the same reasons that optionees are required to turn their corners squarely in exercising option rights, it is not too much to ask that a party adhere closely to the notice of cancellation provision of a financing condition clause.” Id., 39 Mass.App.Ct. at 307.